Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/19/2018 09:12 AM CDT

State of Nebraska, appellee, v.
Trevelle J. Taylor, appellant.
___ N.W.2d ___

Filed July 27, 2018.    No. S-17-1034.

1. **Postconviction: Constitutional Law: Appeal and Error.** In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief.
2. **Postconviction: Right to Counsel: Appeal and Error.** An appellate court reviews the failure of the district court to provide court-appointed counsel in a postconviction proceeding for an abuse of discretion.
3. **Postconviction: Constitutional Law: Judgments.** Postconviction relief is available to a prisoner in custody under sentence who seeks to be released on the ground that there was a denial or infringement of his or her constitutional rights such that the judgment was void or voidable.
4. **Postconviction: Constitutional Law: Proof.** In a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable.
5. **____: ____: ____.** A court must grant an evidentiary hearing to resolve the claims in a postconviction motion when the motion contains factual allegations which, if proved, constitute an infringement of the defendant's rights under the Nebraska or federal Constitution.
6. **Postconviction: Proof.** If a postconviction motion alleges only conclusions of fact or law, or if the records and files in the case affirmatively show that the defendant is entitled to no relief, the court is not required to grant an evidentiary hearing.
7. **Constitutional Law: Effectiveness of Counsel.** A proper ineffective assistance of counsel claim alleges a violation of the fundamental constitutional right to a fair trial.

8. **Effectiveness of Counsel: Proof: Words and Phrases: Appeal and Error.** To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. To show prejudice under the prejudice component of the *Strickland* test, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome.

9. **Effectiveness of Counsel: Presumptions: Proof.** The two prongs of the ineffective assistance of counsel test under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), may be addressed in either order, and the entire ineffectiveness analysis should be viewed with a strong presumption that counsel's actions were reasonable.

10. **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protection is a question of law that an appellate court reviews independently of the trial court's determination.

11. **Trial: Effectiveness of Counsel: Prosecuting Attorneys: Appeal and Error.** Determining whether defense counsel was ineffective in failing to object to prosecutorial misconduct requires an appellate court to first determine whether the petitioner has alleged any action or remarks that constituted prosecutorial misconduct.

12. **Trial: Prosecuting Attorneys: Juries.** A prosecutor's conduct that does not mislead and unduly influence the jury does not constitute misconduct.

13. **Trial: Prosecuting Attorneys.** A prosecutor is entitled to draw inferences from the evidence in presenting his or her case, and such inferences generally do not amount to prosecutorial misconduct.

14. **Postconviction: Right to Counsel.** Under the Nebraska Postconviction Act, it is within the discretion of the trial court as to whether counsel shall be appointed to represent the defendant.

15. **Postconviction: Justiciable Issues: Right to Counsel: Appeal and Error.** Where the assigned errors in the postconviction petition before the district court are either procedurally barred or without merit, thus

establishing that the postconviction proceeding contained no justiciable issue of law or fact, it is not an abuse of discretion to fail to appoint appellate counsel for an indigent defendant.

Appeal from the District Court for Douglas County: Marlon A. Polk, Judge. Affirmed.

Trevelle J. Taylor, pro se.

Douglas J. Peterson, Attorney General, and Erin E. Tangeman for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, and Papik, JJ., and Johnson, District Judge.

Miller-Lerman, J.

## NATURE OF CASE

Trevelle J. Taylor was convicted of first degree murder and use of a deadly weapon to commit a felony. In this postconviction action, he claimed that he received ineffective assistance of counsel. In a written order, the district court for Douglas County overruled Taylor's postconviction motion without an evidentiary hearing and without appointing counsel. Taylor appeals. We affirm the district court's order.

## STATEMENT OF FACTS

Taylor was originally convicted of first degree murder and use of a weapon to commit a felony in 2010, but his convictions were reversed on direct appeal because of an erroneous jury instruction. See *State v. Taylor*, 282 Neb. 297, 803 N.W.2d 746 (2011) (*Taylor I*). After a new trial on remand, Taylor was again convicted of both charges. We affirmed the convictions on appeal; we also affirmed the sentence of imprisonment for 10 to 10 years for use of a weapon to commit a felony, but because Taylor was under 18 years of age at the time of the offense, we vacated the sentence of life imprisonment for first degree murder and remanded the cause for resentencing as to that conviction. See *State v. Taylor*, 287 Neb. 386, 842 N.W.2d 771 (2014) (*Taylor II*). Taylor was resentenced on February 5,

2016, to imprisonment for 40 to 40 years for first degree murder, with the sentence to run consecutively to his sentence for use of a weapon to commit a felony.

Taylor was charged and convicted of fatally shooting Justin Gaines outside Gaines' residence on September 19, 2009. The facts related to the charges in this case are set forth in greater detail in *Taylor I* and *Taylor II*, but certain facts are set forth in the analysis below as they pertain to Taylor's postconviction claims.

On March 30, 2016, Taylor filed a pro se motion for postconviction relief. He set forth three claims of ineffective assistance of trial counsel. He claimed that counsel was ineffective for (1) failing to object to the admission of evidence obtained from an allegedly unconstitutional detention and arrest, (2) failing to object to allegedly inadmissible hearsay testimony regarding the general location in which a gun tied to the shooting was found, and (3) failing to object to and move for a mistrial based on the prosecutor's allegedly improper closing arguments. He also claimed that the cumulative effect of these alleged errors denied him effective assistance of counsel. Taylor requested an evidentiary hearing, appointment of postconviction counsel, and relief including reversal of his convictions and vacation of his sentences.

In a written order filed August 31, 2017, the district court rejected each of Taylor's claims. The specific allegations of the claims and the court's disposition of each is set forth in the analysis below. The court overruled Taylor's motion for postconviction relief, denied his request for an evidentiary hearing, and denied his request for appointment of counsel.

Taylor appeals.

### ASSIGNMENTS OF ERROR

Taylor claims that the district court erred when it found each of his claims to be without merit and overruled his motion for postconviction relief without an evidentiary hearing. He also claims the district court erred when it refused to appoint postconviction counsel.

## STANDARDS OF REVIEW

[1] In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief. *State v. Collins*, 299 Neb. 160, 907 N.W.2d 721 (2018).

[2] We review the failure of the district court to provide court-appointed counsel in a postconviction proceeding for an abuse of discretion. *State v. Haynes*, 299 Neb. 249, 908 N.W.2d 40 (2018).

## ANALYSIS

*Postconviction Standards.*

[3,4] Because Taylor appeals from the denial of postconviction relief, we begin by reviewing standards related to postconviction cases. Postconviction relief is available to a prisoner in custody under sentence who seeks to be released on the ground that there was a denial or infringement of his or her constitutional rights such that the judgment was void or voidable. *State v. Vela*, 297 Neb. 227, 900 N.W.2d 8 (2017). Thus, in a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable. *Id*.

[5,6] A court must grant an evidentiary hearing to resolve the claims in a postconviction motion when the motion contains factual allegations which, if proved, constitute an infringement of the defendant's rights under the Nebraska or federal Constitution. *Id*. If a postconviction motion alleges only conclusions of fact or law, or if the records and files in the case affirmatively show that the defendant is entitled to no relief, the court is not required to grant an evidentiary hearing. *Id*.

Taylor's claims for postconviction relief assert that he received ineffective assistance of counsel. Because Taylor was

represented both at trial and on direct appeal by the same lawyer or lawyers from the same office, this motion for post-conviction relief was his first opportunity to assert ineffective assistance of counsel. See *State v. Haynes, supra*.

[7-9] A proper ineffective assistance of counsel claim alleges a violation of the fundamental constitutional right to a fair trial. *State v. Vela, supra*. To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Vela, supra*. To show prejudice under the prejudice component of the *Strickland* test, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. *Id*. A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome. *Id*. The two prongs of this test may be addressed in either order, and the entire ineffectiveness analysis should be viewed with a strong presumption that counsel's actions were reasonable. *State v. Cotton*, 299 Neb. 650, 910 N.W.2d 102 (2018).

With these principles in mind, we turn to Taylor's specific claims of ineffective assistance of counsel.

*Claim I: Suppression of Evidence.*

Taylor's first claim was that counsel was ineffective for failing to object to the admission of evidence obtained from an allegedly unconstitutional detention and arrest. Taylor noted that prior to his first trial, counsel had filed a motion to suppress evidence obtained as a result of his detention and arrest, which he alleged were made without reasonable suspicion or probable cause. Taylor's motion was successful in part. The court determined that statements made by Taylor should be

suppressed because he was interrogated before he was read his *Miranda* rights. See *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). The court also determined that a DNA sample should be suppressed because Taylor was coerced into giving the sample. However, the court denied the remainder of the motion to suppress because it found that the detention and arrest were not unconstitutional.

The facts related to Taylor's detention and arrest were generally as follows: A witness saw two men shooting into a vehicle in which the victim, Gaines, was seated. The witness described one of the shooters as wearing a brown shirt. Police officers who arrived on the scene of the shooting broadcast a description of a white vehicle that was believed to have been connected with the suspects. Officer Joel Strominger heard the broadcast and was in the vicinity of the shooting when he saw a vehicle that matched the description in the broadcast. Strominger observed a man standing near the passenger side of the vehicle who appeared to have exited the vehicle. The man was holding something brown in his hand. When the vehicle and the man departed in opposite directions, Strominger followed the vehicle. He radioed a description of the man and the direction the man was heading to other officers.

Officer Jarvis Duncan heard Strominger's description and was traveling in the direction that Strominger had said the man was going. Duncan saw a man, Taylor, who fit the description given by Strominger. When Duncan and his partner pulled their cruiser up next to Taylor, Taylor started running. Duncan and his partner chased after Taylor and ordered him to stop, but he kept running. They caught up to Taylor at the front door of a house. Before the officers apprehended Taylor, they saw him throw something behind a tree in the front yard of the house. Duncan later found a brown shirt by the tree. At trial, a witness to the shooting identified the brown shirt found under the tree as the shirt worn by one of the shooters. Duncan and his partner handcuffed Taylor and placed him inside their cruiser.

The officers took Taylor to Strominger, who was nearby. Strominger identified Taylor as the man he had seen earlier beside the vehicle.

Taylor claimed in his postconviction motion that trial counsel failed to properly object at trial to the admission of evidence that was obtained as a result of his arrest and, thus, failed to preserve for appeal the issue of the constitutionality of his arrest. He asserted that counsel either did not object to such evidence or that counsel's objection was inadequate because counsel objected on bases other than the constitutionality of his detention and arrest. Taylor's allegations in support of this claim focused on the brown shirt, which was received into evidence, and testimony by witnesses who identified one of the shooters as wearing a brown shirt.

The postconviction district court rejected Taylor's first postconviction claim. The district court reasoned in part that the trial court had reviewed Duncan's actions in stopping and arresting Taylor and had "ruled Officer Duncan's actions to be legal" and that therefore, the stop and arrest were not unconstitutional.

[10] We have reviewed the trial court's ruling on Taylor's motion to suppress. We determine that even if trial counsel had challenged the constitutionality of the detention and arrest on appeal, the ruling would have been affirmed. In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protection is a question of law that an appellate court reviews independently of the trial court's determination. *State v. Botts*, 299 Neb. 806, 910 N.W.2d 779 (2018). Based on the evidence presented by the State at the hearing on Taylor's motion to suppress, we agree with the district court's conclusion that the detention and arrest of Taylor did not violate the Fourth Amendment. Therefore, no evidence obtained

as a result of Taylor's arrest or detention should have been suppressed based on an illegal search or seizure.

Because the trial court's ruling on the motion to suppress was correct, we conclude that Taylor has not shown prejudice resulting from trial counsel's failure to object at trial to evidence obtained as a result of his detention and arrest. Even if such objection had been made, it would properly have been overruled, and even if the issue had been preserved and raised on appeal, it would not have resulted in a reversal of Taylor's conviction. See *State v. Schwaderer*, 296 Neb. 932, 898 N.W.2d 318 (2017) (counsel not ineffective for failing to renew motion to suppress at trial when motion raised meritless argument). We therefore conclude that the district court did not err when it rejected Taylor's first postconviction claim without an evidentiary hearing.

*Claim II: Hearsay Regarding*
*Location of Gun.*

Taylor's second claim was that counsel was ineffective for failing to object to allegedly inadmissible hearsay testimony regarding the general location in which a gun tied to the shooting was found. In *Taylor II*, Taylor claimed that the trial court erred when it overruled his objection based on hearsay to testimony regarding the specific location in which the gun was found. We rejected the claim in *Taylor II*, in part because it was cumulative of prior testimony, to which Taylor did not object, regarding the general location in which the gun was found. In this postconviction claim, Taylor asserts counsel was ineffective for failing to object to the testimony regarding the general location. In effect, the claim is that trial counsel was deficient when he failed to object sooner.

Joseph Copeland was a witness called by the State. Copeland lived near where the shooting occurred, and he testified that at the time of the shooting, just after he heard gunfire, he saw a man running down his street. Copeland further testified that approximately 2 months after the shooting, he called police to

his residence because his son and a neighbor boy had found a gun "in the trees" when they were looking for an airplane they had lost when they "were playing down at the school." Copeland testified that his son had brought the gun to him and that his son had shown him where he found the gun.

When the State asked Copeland to indicate on a map the location where his son had said he had found the gun, Taylor's counsel objected based on hearsay and the court sustained the objection. The State then asked Copeland whether he "physically went to that location," and Copeland responded, "Yes." The State again asked Copeland to identify the location on the map, and this time the court overruled Taylor's counsel's objection and allowed Copeland to identify the exact location.

On appeal in *Taylor II*, the State conceded that Copeland's testimony regarding the exact location of the gun was inadmissible hearsay, but it argued that admission of the testimony was harmless error. We agreed that the testimony was inadmissible hearsay and that the error was harmless. We reasoned that Copeland's testimony regarding the precise location of the gun was cumulative of earlier testimony by Copeland to which Taylor had not objected. We noted that Copeland had already testified without objection that his son had found the gun in the trees at the school. We also noted that Copeland's earlier testimony had indicated that he lived near the school. We reasoned that this evidence, admitted without objection, already established that the gun was found near Copeland's home. We further reasoned that the precise location of the gun "was not vital to the State's case" and instead that "[t]he important fact was that the gun was found near Copeland's home, in the area where Copeland had seen someone running the day of the shooting." *Taylor II*, 287 Neb. at 394, 842 N.W.2d at 778. We concluded that "[b]ecause evidence of the general location of the gun was received without objection, the subsequent hearsay [regarding the exact location] was cumulative." *Id.* We additionally reasoned that "there was a substantial amount of other evidence that established Taylor's guilt." *Id.*

Taylor claimed in his postconviction motion that trial counsel was ineffective for failing to object based on hearsay as soon as Copeland mentioned the gun and the general location in which it was found. He argued that counsel knew from prior proceedings the nature of Copeland's testimony and should have known where the testimony was going. He further argued that the error in admitting the evidence was not harmless because other evidence that we relied on in *Taylor II* to support his conviction was also improperly admitted.

In its written order, the district court rejected Taylor's second postconviction claim. The court noted that in *Taylor II*, we had found the error in admitting hearsay testimony regarding the exact location of the gun was harmless not only because it was cumulative of earlier testimony regarding the general location of the gun, but also "more significantly" because there was a substantial amount of other evidence that supported Taylor's conviction. The court stated that it was apparent that "even if the Copeland testimony was completely disregarded the record contained sufficient evidence to support . . . Taylor's conviction."

Taylor claims in this appeal that the postconviction district court erred in its legal analysis when it relied on our decision in *Taylor II* that admission of hearsay testimony regarding the location of the gun was harmless error because of the substantial amount of other evidence that support Taylor's conviction. He argues that much of the other evidence on which we relied in reaching our determination in *Taylor II* was also inadmissible because it was obtained as the result of his detention and arrest. However, as we discussed above, the trial court did not err when it determined that Taylor's detention and arrest were not unconstitutional. Therefore, the other evidence upon which we relied in *Taylor II* was not improper based on a claim of illegal detention and arrest and it did support our conclusion in *Taylor II* that error in admitting hearsay regarding the specific location in which the gun was found was harmless error.

In contrast to our analytical framework in the direct appeal, *Taylor II*, we note that in this postconviction action the operative question is not whether error in admitting the evidence was harmless error. Instead, with regard to Taylor's claim of ineffective assistance of counsel, the court must determine whether counsel's alleged deficient performance caused prejudice to the defendant. To show prejudice under the prejudice component of the *Strickland* test, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. *State v. Vela*, 297 Neb. 227, 900 N.W.2d 8 (2017). This is a different standard from the harmless error analysis in *Taylor II*, which required us to find that Taylor's conviction was surely unattributable to the error in admitting hearsay evidence of the specific location of the gun.

In this postconviction action, the operative question is whether there is a reasonable probability that but for counsel's failure to object to Copeland's testimony regarding the general location of the gun the result of the proceeding would have been different. In other words, we must determine whether, if counsel had objected and the testimony had been excluded, there is a reasonable probability that Taylor would not have been convicted. We determine that because there was sufficient other evidence of Taylor's guilt, the admission of Copeland's unchallenged testimony regarding the location of the gun does not undermine confidence in the outcome of the trial and there was not a reasonable probability that the result of the trial would have been different if the testimony had been excluded. We conclude that the district court did not err when it rejected Taylor's second postconviction claim without an evidentiary hearing.

*Claim III: Prosecutor's Comments*
*in Closing Arguments.*

Taylor's third claim was that counsel was ineffective for failing to object to and move for a mistrial based on allegedly

improper closing arguments made by the prosecutor. Taylor identified five occurrences from the prosecutor's closing arguments that he claimed were improper.

In the first occurrence, the prosecutor referred to evidence that Taylor was riding in a car with a codefendant and told the jury, "you use your own common sense. There's conversation going on in that car." The prosecutor later stated, "We don't have evidence of what happened in that car, but use your common sense, the discussion that took place before they get out of the car." Taylor argued these comments were improper because the prosecutor was "inject[ing] her personal belief which was unsupported by the evidence more than once."

In the second occurrence, the prosecutor referred to Copeland's testimony and stated, "Copeland sees him on this block right here . . . . [Copeland] testified that he saw the defendant cut across right here . . . towards Mary Street where the gun's found." Taylor argued that these comments misstated the evidence because Copeland testified only that he saw a "black male" running down the street and that Copeland gave no further description and he never identified Taylor as the person he had seen.

In the third occurrence, the prosecutor stated, "[Taylor] had just run through the neighborhood with that brown shirt holding this gun . . . in his shorts." Taylor argued this comment was not supported by the evidence, because no witness testified to seeing Taylor holding a gun as he ran through the neighborhood.

In the fourth occurrence, the prosecutor referred to Taylor's codefendant, who testified at Taylor's trial and stated:

> What [the codefendant] testified to is the truth. Did he tell you everything? No. He's not telling you everything because he's friends with [Taylor] . . . . He doesn't want to give everything up, what he is telling you is the truth, because it's corroborated throughout the testimony and evidence of all the other witnesses.

The prosecutor stated in rebuttal:

[Defense counsel] wants you to say that we called [the codefendant] a liar. We didn't call him a liar. He told you the truth. Everything he told you is corroborated. . . .

What he did tell you is the truth. And it's corroborated by every other piece of evidence you have in this case . . . .

Taylor argued that the prosecutor was improperly vouching for its main witness.

In the fifth occurrence, the prosecutor referred to a witness who had seen the shooting and stated that she

came in here and she told you who she identified. Didn't get a good look at either one of their faces, but think about it, use your common sense. If you're standing there, you're going through what [the witness] went through, are you going to remember a visual face or are you going to remember — is clothing going to stand out more? Is a brown shirt with orange writing, are you going to forget that?

Taylor argued that this comment was improper because it asked the jurors to put themselves in the shoes of the witness and it therefore encouraged the jurors to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on evidence.

The district court rejected Taylor's third postconviction claim. The court stated, "Having reviewed the record it is clear to this Court that the prosecution did not engage in prosecutorial misconduct as any statements made by the prosecutor that may have been inaccurate did not mislead and unduly influence the jury. The prosecutor was merely making her closing argument to the jury." The court further stated that the prosecutor's comments "were reasonably drawn inferences from the evidence" and that trial counsel had "used his opportunity, during his closing argument to contest and/or discredit" the prosecutor's comments.

[11-13] Determining whether defense counsel was ineffective in failing to object to prosecutorial misconduct requires an appellate court to first determine whether the petitioner has alleged any action or remarks that constituted prosecutorial misconduct. *State v. Ely*, 295 Neb. 607, 889 N.W.2d 377 (2017). A prosecutor's conduct that does not mislead and unduly influence the jury does not constitute misconduct. *Id*. A prosecutor is entitled to draw inferences from the evidence in presenting his or her case, and such inferences generally do not amount to prosecutorial misconduct. *Id*. We determine that the first, second and third occurrences described above were instances of the prosecutor's drawing inferences from the evidence in making her arguments to the jury and did not amount to prosecutorial misconduct.

Regarding the fourth occurrence, Taylor argues that the prosecutor was improperly vouching for the witness. However, we do not read the prosecutor's comments as vouching for the truth of the witness' testimony. The prosecutor was not asserting that she had personal knowledge of the witness' veracity. Instead, the prosecutor was pointing out that the testimony was corroborated by other evidence, and therefore, the prosecutor was drawing the inference that the witness' testimony was credible because it was consistent with other evidence. This argument did not amount to prosecutorial misconduct. See *State v. Gonzales*, 294 Neb. 627, 884 N.W.2d 102 (2016) (stating that while prosecutor should not express his or her personal belief or opinion as to truth or falsity of any testimony, when prosecutor's comments rest on reasonably drawn inferences from evidence, prosecutor is permitted to highlight relative believability of witnesses).

Regarding the fifth occurrence, Taylor contends that the prosecutor improperly asked the jurors to put themselves in the shoes of the witness and base their verdict on personal interest or bias. In his motion for postconviction relief, Taylor cited *Forrestal v. Magendantz*, 848 F.2d 303, 309 (1st Cir. 1988), for the proposition that it is improper for an attorney to make

a "so-called Golden Rule argument" which encourages the jury to put itself in the shoes of a plaintiff and which encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence. However, the prosecutor's comments in this case were significantly different from this sort of argument. Instead, the prosecutor used inferences from the evidence to explain why the witness may have remembered certain details but not remembered other details of the suspects' appearances. The prosecutor did not ask the jurors to put themselves in the shoes of a party or in the shoes of the victim and to therefore render a verdict based on personal interest or bias. Instead, the prosecutor asked the jurors to consider how the circumstances may have affected the witness' observations and recollections. These comments did not constitute misconduct.

Because none of the occurrences urged by Taylor constituted prosecutorial misconduct, the district court did not err when it rejected Taylor's third claim of ineffective assistance of counsel.

*Cumulative Effect and Summary.*

Taylor also claimed that even if each of his individual claims of ineffective assistance of counsel was insufficient to support postconviction relief, then the cumulative effect of all the alleged instances of counsel's deficient performance resulted in an unfair trial requiring postconviction relief. However, because we conclude that each of Taylor's individual claims was without merit, we further conclude that the cumulative effect of such claims did not result in an unfair trial and does not merit postconviction relief. See *State v. Robinson*, 287 Neb. 606, 843 N.W.2d 672 (2014).

Because none of Taylor's claims of ineffective assistance of counsel had merit, either individually or collectively, we conclude that the district court did not err when it overruled his motion for postconviction relief without granting an evidentiary hearing.

*Appointment of Counsel.*

[14,15] Taylor finally claims that the court erred when it denied his motion for appointment of counsel. Under the Nebraska Postconviction Act, it is within the discretion of the trial court as to whether counsel shall be appointed to represent the defendant. *State v. Epp*, 299 Neb. 703, 910 N.W.2d 91 (2018). Where the assigned errors in the postconviction petition before the district court are either procedurally barred or without merit, thus establishing that the postconviction proceeding contained no justiciable issue of law or fact, it is not an abuse of discretion to fail to appoint appellate counsel for an indigent defendant. *Id*. We therefore conclude the district court did not abuse its discretion when it denied Taylor's motion to appoint postconviction counsel.

## CONCLUSION

We conclude that the district court did not err when it overruled Taylor's motion for postconviction relief without an evidentiary hearing and that it did not abuse its discretion when it denied his motion to appoint counsel. We therefore affirm the district court's order.

AFFIRMED.