IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. LEWIS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

XHERONTE N. LEWIS, APPELLANT.

Filed September 4, 2018.     Nos. A-17-899, A-17-900.

Appeals from the District Court for Lancaster County: JOHN A. COLBORN, Judge. Affirmed.

Matthew K. Kosmicki for appellant.

Douglas J. Peterson, Attorney General, and Siobhan E. Duffy for appellee.

MOORE, Chief Judge, and ARTERBURN and WELCH, Judges.

MOORE, Chief Judge.

## I. INTRODUCTION

Xheronte N. Lewis appeals from his plea-based convictions and sentences in the district court for Lancaster County for aiding and abetting robbery in case No. A-17-899, and for another count of aiding and abetting robbery in case No. A-17-900. The two cases were consolidated for plea and sentencing purposes in the district court and have been consolidated on appeal. Here, Lewis contends that he was denied effective assistance of counsel and that his sentences were excessive. Upon our review, we find the record insufficient to address many of Lewis' assertions regarding ineffective assistance of counsel on direct appeal. Other claims of ineffective assistance were either affirmatively refuted by the record or stated with insufficient particularity to raise them on direct appeal and preserve them for later review. Additionally, we find that Lewis' sentences for his convictions for aiding and abetting robbery were not excessive. Accordingly, we affirm.

## II. BACKGROUND

On July 8, 2016, the State filed informations in the district court in both cases at issue in this appeal. In case No. A-17-899, the State charged Lewis with aiding and abetting robbery in violation of Neb. Rev. Stat. § 28-206 (Reissue 2016) and Neb. Rev. Stat. 28-324 (Reissue 2016), a Class II felony. The charges in case No. A-17-899 stemmed from events occurring on April 18, 2016. In case No. A-17-900, the State charged Lewis with robbery in violation of § 28-324, a Class II felony; two counts of first degree false imprisonment in violation of Neb. Rev. Stat. § 28-314 (Reissue 2016), both Class IIIA felonies; child abuse in violation of Neb. Rev. Stat. § 28-707(1) and (4) (Reissue 2016), a Class IIIA felony; and two counts of terroristic threats in violation of Neb. Rev. Stat. § 28-311.01 (Reissue 2016), both Class IIIA felonies. The charges in case No. A-17-900 stemmed from events occurring on December 29, 2015.

On July 17, 2017, a plea hearing was held in the district court. The State informed the court that the parties had "a three-case plea compromise." The State indicated that Lewis would be pleading to the charge in case No. A-17-899. The State asked the court for leave to file an amended information in case No. A-17-900 and indicated that Lewis would be pleading to the amended information in that case. The amended information in case No. A-17-900 charged Lewis with one count of aiding and abetting robbery in violation of § 28-206 and § 28-324, a Class II felony. Finally, the State indicated that it would be dismissing a third case in which Lewis had been charged with theft by unlawful taking, a Class IV felony. We note that Lewis was represented by one attorney in the two cases on appeal and by another attorney in the case that was dismissed pursuant to the plea agreement. Both of Lewis' attorneys were present at the plea hearing.

After Lewis waived 24-hour notice and reading of the amended information, as well as a preliminary hearing, in case No. A-17-900, the State arraigned him on the amended information in that case and re-arraigned him on the information in case No. A-17-899. During the arraignment portion of the hearing, Lewis indicated his understanding of the nature of the charges and possible penalties in both cases.

Upon the district court's inquiry, Lewis informed the court that he was pleading guilty to the amended charge in case No. A-17-900 and the charge in case No. A-17-899. The court then explained and Lewis indicated his understanding of his constitutional rights, the consequences of pleading guilty, the nature of the charges, and the possible penalties. The court explained that any sentence imposed in case No. A-17-899 "could be consecutive, that is in addition to the sentence at [case No. A-17-900]." Based on Lewis' response, the court explained further that this meant "[o]ne after the other," and Lewis indicated his understanding.

The State then provided a detailed factual basis for the charges to which Lewis was pleading in both cases, which we summarize below.

The factual basis provided for case No. A-17-900 showed that on December 29, 2015, Lewis and another male individual (the second man) showed up at an apartment to look at the TV that the resident there had to sell and also "a PS4." Another individual who "was going to be there with the PS4" had not arrived yet. The apartment resident did not know Lewis, only discovering his name later "through friends and social media," but she knew the second man "upon sight from previous contact." Upon the men's inquiry, the resident told them that the person bringing the

"PS4" would be there in about 10 to 15 minutes. The second man said, "Good, because we are going to rob you all," and both he and Lewis pulled out black semiautomatic handguns. The resident reported to police that the second man placed a gun to her head, told her to sit on the couch, and told her that "if there was any funny business, they would both put clips in her."

While the two men were waiting for the individual with the "PS4," the resident's friend arrived unexpectedly. The resident reported to police that the second man grabbed the friend, pointed his gun at her head, made her sit on the couch, and told her that they would shoot her "if she moved or tried anything." When the friend informed the two men that her 4-year-old daughter was still in her car, the men told her that she could not go get her child. Lewis then retrieved the child and brought her into the apartment. Lewis forced the child into the back bedroom and told her to stay there and play with toys. The friend was not allowed to leave the couch or comfort her child. The child was "restrained in the back room" during the remainder of the robbery.

The two men took $550 from the resident's entertainment center, $400 from her kitchen, and $100 from her pocket. When the individual who was to be bringing the "PS4" arrived, the second man threw him to the ground. The two men took an unknown amount of money from this individual's wallet as well as his car keys, but they did not take his car. The resident reported to police that later in the evening, she had "text conversations or contact" with the second man about trying to get the car keys back, and the second man told her he wanted more money in return for the keys. Both the resident and the friend positively identified Lewis and the second man, in separate photo arrays, as the men that "robbed them at gunpoint."

The factual basis provided for case No. A-17-899 showed that on April 18, 2016, police were dispatched to a call regarding gunshots being heard at a particular residential address. Dispatchers relayed incoming information, including a general description of a possible suspect who was seen leaving the residence around the time of the shooting. When police arrived at the location, they found two adult victims and a dog all suffering from gunshot wounds. There were also several small children present in the residence. Medical personnel confirmed that one of the adult shooting victims was deceased; the other adult shooting victim was transported to the hospital where he received extensive medical treatment for his wounds. Shortly after the original dispatch, police located a man matching the general description of the suspect, walking less than three blocks from the residence. The man was later identified as Lewis. Lewis told police he was at the residence when the shots were fired. He was detained, arrested on an active warrant, and transported to the police department for an interview. When Lewis was taken into custody, he had marijuana on his person, and a search of the crime scene revealed marijuana, cash, and materials consistent with the packaging of narcotics for distribution.

During his interview with police, Lewis described his visit to the residence to purchase marijuana, including his observations of others present at the scene. He told police that as he was leaving the residence after completing his purchase, he observed a man in a puffy black coat waiting on the front porch. The man then entered the residence and Lewis heard someone inside yell, followed by a series of gunshots. Lewis told police he immediately ran from the residence and hid behind some bushes until the man left the area. Lewis stated that he returned to the residence, looked through the open door, and observed someone lying on the floor with a small child standing next to him. Lewis stated that he then walked away from the residence and was

contacted by police. In a second interview at the jail, Lewis told investigators he knew the man who went into the residence just before the shooting, that the man was drawing a pistol as he entered the residence, and that Lewis feared retaliation.

The factual basis indicated that witnesses corroborated portions of Lewis' statements to police, but witnesses contradicted his statement that he did not arrive at the residence with anyone else as well as his statement that he was not inside the residence during or after the shooting. A witness described a person matching Lewis' description, who the witness observed returning to the residence after the shooting to retrieve an unknown item. The witness observed that the man in the puffy black coat was holding something under his coat as he was leaving the residence and that this man and the man matching Lewis' description left in separate directions after the shooting.

After the State provided the factual bases for Lewis' pleas, Lewis' attorney observed that there had been a lengthy investigation of both of these incidents and told the district court that the facts regarding the December 29, 2015 incident were "somewhat different than what was originally reported, which was what [the prosecutor] just read to you." He stated further:

I think the true facts are that [a man], accompanied by [Lewis], went to the . . . residence to make a drug purchase from [two individuals].

[One of the individuals] wasn't there at the time, and when [Lewis' companion] was unable to get the terms of the transaction he wanted, he became angry and decided to take it from them, and then pulled the handgun. So nothing to do with the PS, PlayStation machine or anything, it was a drug transaction that [Lewis] accompanied [another man] to that location and then it went bad, and [the other man] decided he was going to take it from them. I think that's what later investigation revealed and that's what [Lewis] told the officers. I think they believed that, that's what the true facts were. It had nothing to do with the PlayStation.

Following these statements by Lewis' attorney, the district court asked Lewis whether he aided and abetted a robbery in each of these cases. Lewis responded affirmatively and affirmed that his attorney explained each of the charges to him. The court also asked a series of questions referencing both of Lewis' attorneys. In response to these questions, Lewis affirmed that he had had an adequate amount of time to discuss these matters, had gone over all of the facts and possible consequences, and had discussed all possible defenses he may have to the charges with his attorneys. Lewis also affirmed that he had told his attorneys everything he knows about these matters and that his attorneys were competently representing him.

The prosecutor then restated the terms of the "three-case plea agreement," and Lewis and both of his attorneys affirmed their understanding of the agreement as it had been stated. Upon the district court's inquiry, Lewis affirmed that, other than the plea agreement, no one had made any promise or threats or used any force or inducement to get him to plead guilty; that no one had made him any promises as to what his actual sentences would be; that he still wished to plead guilty to the charges and was doing so freely, voluntarily, knowingly, and intelligently; and that he was pleading guilty because he was, in fact, guilty of the charges. Both of Lewis' attorneys affirmed their respective belief that Lewis' pleas were consistent with the law and the facts and that Lewis was pleading freely, voluntarily, knowingly, and intelligently.

The district court found beyond a reasonable doubt that there was a sufficient factual basis to accept Lewis' pleas in both cases; that Lewis understood the nature of the charges, his rights, and the consequences of his pleas; and that his pleas were made freely, voluntarily, knowingly, and intelligently. The court accepted Lewis' pleas and found him guilty of the charge in both cases.

A sentencing hearing was held on August 3, 2017. After hearing comments by the State, Lewis, and his attorney in the two cases in which Lewis pled guilty, the district court imposed sentence in both cases. The court stated that it had considered the comments of Lewis and his attorney and all of the information provided in the presentence investigation report. The court stated that it had also given "significant consideration" to the fact that Lewis cooperated with law enforcement. The court stated further:

> However, I cannot ignore the serious nature of each of these crimes, the violent nature of each crime. Firearms involved in each crime. In the one robbery case, . . . you went out to a car and brought a four-year-old into an armed robbery. And I realize you've stated you were trying to protect the child, but you brought the child into a dangerous setting, where . . . an armed robbery was in progress.
>
> With respect to the other robbery, . . . that resulted in the death of one individual. And the other person was shot and forever changed. That person is paralyzed now. And I can't ignore the serious nature of those crimes. Any sentence I impose has to take into consideration the protection of the public.

In case No. A-17-899, the court sentenced Lewis to imprisonment for a period of 25 to 35 years and gave him credit for 468 days of time previously served. The court imposed a consecutive sentence of 25 to 35 years in case No. A-17-900. On August 3, the court entered orders memorializing Lewis' sentences in both cases.

## III. ASSIGNMENTS OF ERROR

Lewis asserts that (1) he received ineffective assistance of trial counsel in various regards and (2) the district court abused its discretion by ordering him to serve excessive sentences.

## IV. STANDARD OF REVIEW

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Vanness*, 300 Neb. 159, 912 N.W.2d 736 (2018). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Steele*, 300 Neb. 617, 915 N.W.2d 560 (2018). A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *State v. Clemens*, 300 Neb. 601, 915 N.W.2d 550 (2018).

## V. ANALYSIS

### 1. INEFFECTIVE ASSISTANCE OF COUNSEL

Lewis asserts that he received ineffective assistance of trial counsel in various regards. He is represented on direct appeal by different counsel than trial counsel. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. *State v. Wells*, 300 Neb. 296, 912 N.W.2d 896 (2018). Otherwise, the issue will be procedurally barred. *Id.*

Appellate courts have generally reached ineffective assistance of counsel claims on direct appeal only in those instances where it was clear from the record that such claims were without merit or in the rare case where trial counsel's error was so egregious and resulted in such a high level of prejudice that no tactic or strategy could overcome the effect of the error, which effect was a fundamentally unfair trial. *State v. Casares*, 291 Neb. 150, 864 N.W.2d 667 (2015). An ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing. *State v. Nolt*, 298 Neb. 910, 906 N.W.2d 309 (2018).

When an ineffective assistance of counsel claim is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *State v. Casares, supra*. General allegations that trial counsel performed deficiently or that trial counsel was ineffective are insufficient to raise an ineffective assistance claim on direct appeal and thereby preserve the issue for later review. *Id.* An ineffective assistance of counsel claim made on direct appeal can be found to be without merit if the record establishes that trial counsel's performance was not deficient or that the appellant could not establish prejudice. *Id.*

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Taylor*, 300 Neb. 629, 915 N.W.2d 568 (2018). To show deficient performance, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *State v. Wells, supra*. The prejudice requirement in a plea context is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty. *State v. Haynes*, 299 Neb. 249, 908 N.W.2d 40 (2018). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *State v. Wells, supra*. The two prongs of the ineffective assistance of counsel test under *Strickland v. Washington, supra*, may be addressed in either order, and the entire ineffectiveness analysis should be viewed with a strong presumption that counsel's actions were reasonable. *State v. Taylor, supra*.

When reviewing a claim of ineffective assistance of counsel, trial counsel is afforded due deference to formulate trial strategy and tactics, and an appellate court will not second-guess reasonable strategic decisions by counsel. *State v. Nolt, supra*. When considering whether trial counsel's performance was deficient, there is a strong presumption that counsel acted reasonably. *Id.*

Lewis asserts that his right to effective assistance of trial counsel was violated in the following ways:

1) [His] attorney improperly advised him that if he cooperated with the prosecution that [he] could expect a plea offer of one count of [a]iding and [a]betting a [r]obbery.

2) [His] attorney improperly advised him that if he cooperated and accepted the plea offer by the State of pleading to two Class [II] [f]elonies of [a]iding and [a]betting a felony that the most he would be sentenced to [was] 10 years['] imprisonment.

3) [His] attorney did not properly advise him by telling him if he did not give a statement to the investigating law enforcement officers that [the] State would vacate the plea deal and he would be charged with far more serious crimes.

4) [He] was improperly advised by his attorney and pressured into pleading guilty to two counts of [a]iding and [a]betting a Class [II] [f]elony under the threat that if he did not cooperate[,] the charges against the mother of his child would not be dropped and she would be charged with murder.

5) [He] was improperly advised by his attorney and pressured into pleading to two counts of [a]iding and [a]betting a Class [II] [f]elony by his trial attorney threatening to withdraw from hi[s] case and [that] he would be charged with a homicide and would stay in jail for another year and [a] half.

6) [He] was improperly advised by his attorney under the promise that if he cooperated with the State and [pled] to two counts of [a]iding and [a]betting a Class [II] [f]elony[,] the prosecution and trial counsel would ask the [c]ourt to order the sentences to be served concurrently.

7) [His] attorney improperly allowed [him] to plead to two counts of [a]iding and [a]betting a Class [II] [f]elony when trial counsel knew or should have known the pleas were not knowingly, voluntarily[,] and intelligently made.

8) [He] was advised by his attorney to enter into a plea agreement on July 7,[ ]2017, despite [his] informing his attorney that [a codefendant] threatened him with a gun to accompany him to each of the crimes Lewis[] was charged with and consequently abandoning and or waiving any potential defense Lewis may have had to the charges.

9) [He] was not properly advised by his attorney, prior to entering his [guilty] pleas, as to the direct criminal consequences of those pleas.

10) [His] attorney permitted [him] to be sentenced based on an involuntary, knowingly[,] and intelligent plea and should have asked to continue the sentencing and move to withdraw his plea of guilty.

11) Absent the deficient performance of his attorney, Lewis would not have entered his pleas of guilty, [and] would not have been sentenced to [25 to 35 years] in prison on each count.

Brief for appellant at 14-16. Except for the allegations in Lewis' claim 10, the allegations above were both assigned as error and argued in his brief. Because claim 10 was not both specifically assigned and specifically argued, we do not consider it further. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be

considered by an appellate court. *State v. Dill*, 300 Neb. 344, 913 N.W.2d 470 (2018). An appellate court does not consider errors which are argued but not assigned. *Id.* We address Lewis' remaining claims below.

### (a) Claims Record Insufficient to Address

Lewis' allegations in claims 3, 4, 5, and 8 involve discussions with his trial counsel and information not present in the record. Accordingly, we conclude that while stated with sufficient particularity to raise them on direct appeal and preserve them for later review, these claims cannot be adequately reviewed on direct appeal.

### (b) Claims Refuted by Record

Lewis' claims 1, 2, 6, and 9 are affirmatively refuted by the record. In these claims, Lewis argues his attorney improperly advised him that if he cooperated with the prosecution, he could expect a plea offer of one count (as opposed to two); and that if he accepted the State's plea offer of pleading to two counts, he would receive a sentence of no more than 10 years and that the prosecutor and his attorney would ask the district court to order concurrent sentences. He also argues that his attorney did not properly advise him prior to pleading as to the "direct criminal consequences" of his pleas. Brief for appellant at 16.

At the plea hearing, Lewis was informed by the prosecutor during the arraignment portion of the hearing of the nature of the charges to which he was pleading and the possible penalties. Later in the hearing, he was informed by the district court of the nature of the charges and possible penalties, including the fact that the court could impose consecutive sentences. At both points during the hearing, Lewis affirmed his understanding of both the nature of the charges and the possible penalties. Lewis was also informed by the court and stated his understanding of the consequences of pleading guilty. Finally, the details of the plea agreement in this case were stated both at the beginning and near the end of the plea hearing. Those recitations of the agreement do not reflect that a sentencing recommendation was part of the agreement. When the court asked if the agreement as recited near the end of the hearing reflected Lewis' understanding of the agreement, he responded affirmatively. Lewis affirmed, upon inquiry by the court, that no one had made him any promises as to the actual sentences for the charges to which he was pleading. Lewis' arguments with respect to claims 1, 2, 6, and 9 are without merit. See *State v. Cotton*, 299 Neb. 650, 910 N.W.2d 102 (2018) (claim of ineffective assistance may be resolved on direct appeal when record is sufficient to affirmatively rebut merits of claim).

### (c) Claims Pled With Insufficient Particularity

Finally, Lewis' claims 7 and 11 have not been alleged with sufficient particularity to raise them on direct appeal and properly preserve them for later review. See *State v. Casares*, 291 Neb. 150, 864 N.W.2d 667 (2015). An ineffective assistance of counsel claim is raised on direct appeal when allegations of deficient performance are made with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to be able to recognize whether the

claim was brought before the appellate court. *State v. Vanness*, 300 Neb. 159, 912 N.W.2d 736 (2018).

In claim 7, Lewis asserts that his attorney improperly allowed him to enter his pleas when his attorney knew or should have known the pleas were not knowingly, voluntarily, and intelligently made. Lewis does not specify any basis for why the pleas were not knowingly, voluntarily, and intelligently made or how his attorney should have known of this issue. This claim has not been stated with sufficient particularity to raise it on direct appeal.

In claim 11, Lewis asserts that absent his attorney's deficient performance, he would not have entered his pleas of guilty and would not have been sentenced to 25 to 35 years in prison on each count to which he pled. In this claim, Lewis has not made specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. See *State v. Casares, supra*. Thus, when claim 11 is viewed in isolation, it has not been stated with sufficient particularity to raise it on direct appeal.

To the extent Lewis intended the allegations in claim 11 to refer to the deficient performance alleged in claims 3, 4, 5, and 8, we again note that those claims cannot be adequately reviewed on direct appeal.

### 2. EXCESSIVE SENTENCE

Lewis asserts that the district court abused its discretion by ordering him to serve excessive sentences. Lewis pled guilty to two counts of aiding and abetting robbery and was sentenced to consecutive sentences of 25 to 35 years on each count. Aiding and abetting robbery is a Class II felony punishable by 1 to 50 years' imprisonment. § 28-206; § 28-324; Neb. Rev. Stat. § 28-105 (Supp. 2017). The sentences imposed by the court for Lewis' convictions were within the statutory limits.

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Steele*, 300 Neb. 617, 915 N.W.2d 560 (2018). In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.* The sentencing court is not limited to any mathematically applied set of factors. *State v. Phillips*, 297 Neb. 469, 900 N.W.2d 522 (2017). The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *State v. Steele, supra*.

Lewis argues that the sentences imposed were extreme and disproportionate to his background and the nature of his involvement in the crimes of which he was convicted. Lewis was 21 years old at the time of the presentence investigation in this case. He attended school through the 11th grade and completed his GED while in jail. He is in a relationship and has a 1-year-old son. Lewis' prior criminal history is not extensive; in addition to the present offenses, he has been

previously convicted of offenses such as possession of marijuana less than 1 ounce, criminal trespass, theft by receiving, and operating motor vehicle to avoid arrest; has received some traffic violations; and had contact with law enforcement that led to charges of theft by unlawful taking that were dismissed pursuant to the three-case plea bargain discussed above. He is clearly remorseful for the present offenses. However, on the Level of Service/Case Management Inventory, Lewis scored in the high risk to reoffend category.

A review of the record from the sentencing hearing shows that the district court considered the relevant factors, including Lewis' cooperation with law enforcement. The court indicated, however, that it could not ignore the serious nature of the crimes in each case. The court did not abuse its discretion in considering the relevant factors and did not impose excessive sentences. Accordingly, we affirm Lewis' sentences following his convictions for aiding and abetting robbery.

## VI. CONCLUSION

We have addressed Lewis' assertions regarding ineffective assistance of counsel as set forth above. With respect to sentencing, the district court did not abuse its discretion or impose excessive sentences.

AFFIRMED.