Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/27/2019 12:06 AM CST

State of Nebraska, appellee, v. Jose C.
Oliveira-Coutinho, appellant.

___ N.W.2d ___

Filed October 4, 2019.    No. S-17-1262.

1. **Postconviction: Constitutional Law: Appeal and Error.** In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief.

2. **Postconviction: Right to Counsel: Appeal and Error.** An appellate court reviews the failure of the district court to provide court-appointed counsel in a postconviction proceeding for an abuse of discretion.

3. **Postconviction: Constitutional Law: Judgments.** Postconviction relief is available to a prisoner in custody under sentence who seeks to be released on the ground that there was a denial or infringement of his or her constitutional rights such that the judgment was void or voidable.

4. **Postconviction: Constitutional Law: Proof.** In a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable.

5. **____: ____: ____.** A court must grant an evidentiary hearing to resolve the claims in a postconviction motion when the motion contains factual allegations which, if proved, constitute an infringement of the defendant's rights under the Nebraska or federal Constitution.

6. **Postconviction: Proof.** If a postconviction motion alleges only conclusions of fact or law, or if the records and files in the case affirmatively show that the defendant is entitled to no relief, the court is not required to grant an evidentiary hearing.

7. **Constitutional Law: Effectiveness of Counsel.** A proper ineffective assistance of counsel claim alleges a violation of the fundamental constitutional right to a fair trial.

8. **Effectiveness of Counsel: Proof: Words and Phrases: Appeal and Error.** To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. To show prejudice under the prejudice component of the *Strickland* test, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome.

9. **Effectiveness of Counsel: Presumptions: Proof.** The two prongs of the ineffective assistance of counsel test under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), may be addressed in either order, and the entire ineffectiveness analysis should be viewed with a strong presumption that counsel's actions were reasonable.

10. **Effectiveness of Counsel.** Counsel's failure to raise novel legal theories or arguments or to make novel constitutional challenges in order to bring a change in existing law does not constitute deficient performance.

11. **Aiding and Abetting: Indictments and Informations: Notice.** An information charging a defendant with a specific crime gives the defendant adequate notice that he or she may be prosecuted for the crime specified or as having aided and abetted the commission of the crime specified.

12. **Constitutional Law: Criminal Law: Right to Counsel.** A criminal defendant's Sixth Amendment right to the assistance of counsel attaches only after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.

13. **Lesser-Included Offenses: Jury Instructions: Evidence.** A court must instruct on a lesser-included offense if (1) the elements of the lesser offense for which an instruction is requested are such that one cannot commit the greater offense without simultaneously committing the lesser offense and (2) the evidence produces a rational basis for acquitting the defendant of the greater offense and convicting the defendant of the lesser offense.

14. **Postconviction: Right to Counsel.** Under the Nebraska Postconviction Act, it is within the discretion of the trial court to decide whether counsel shall be appointed to represent the defendant.

15. **Postconviction: Justiciable Issues: Right to Counsel: Appeal and Error.** Where the alleged errors in the postconviction petition before the district court are either procedurally barred or without merit, thus establishing that the postconviction proceeding contained no justiciable issue of law or fact, it is not an abuse of discretion to fail to appoint postconviction counsel for an indigent defendant.

Appeal from the District Court for Douglas County: Thomas A. Otepka, Judge. Affirmed.

Jose C. Oliveira-Coutinho, pro se.

Douglas J. Peterson, Attorney General, and Stacy M. Foust for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, and Papik, JJ.

Miller-Lerman, J.

## NATURE OF CASE

Jose C. Oliveira-Coutinho appeals the order of the district court for Douglas County which denied his motion for postconviction relief. Oliveira-Coutinho, who is serving sentences of life imprisonment for three first degree murder convictions and 20 years' imprisonment for a theft by deception conviction, set forth numerous claims for postconviction relief. The district court determined that all of Oliveira-Coutinho's claims were either insufficiently pled, affirmatively refuted by the record, or procedurally barred, and the court therefore denied his motion for postconviction relief without an evidentiary hearing and without appointing counsel. We affirm the order denying postconviction relief.

## STATEMENT OF FACTS

Oliveira-Coutinho was convicted of three counts of first degree murder in connection with the 2009 deaths of Vanderlei and Jaqueline Szczepanik and their son, Christopher Szczepanik. Oliveira-Coutinho lived with the Szczepaniks and worked for Vanderlei. He was also convicted of theft by deception based

on evidence that after their deaths, he withdrew money from the Szczepaniks' bank account. Oliveira-Coutinho's convictions and sentences were affirmed on direct appeal. Further details regarding the crimes are provided in our opinion on direct appeal. *State v. Oliveira-Coutinho*, 291 Neb. 294, 865 N.W.2d 740 (2015).

On June 27, 2016, Oliveira-Coutinho filed a pro se motion for postconviction relief in which he set forth numerous claims of ineffective assistance of counsel both at trial and on direct appeal. Oliveira-Coutinho had the same counsel at trial and on direct appeal, and he alleged that this postconviction action was his first opportunity to raise issues of ineffective assistance of trial counsel. Oliveira-Coutinho requested an evidentiary hearing and appointment of postconviction counsel. Oliveira-Coutinho filed an amended motion for postconviction relief on June 26, 2017, in which he repeated his original claims and set forth several new claims. In the amended motion, Oliveira-Coutinho included almost 50 separate claims.

On November 14, 2017, the district court overruled Oliveira-Coutinho's amended motion for postconviction relief without an evidentiary hearing. Generally, the court determined that each of Oliveira-Coutinho's claims was either not pled with specificity, refuted by the record, or procedurally barred. In its order overruling the motion, the court stated that Oliveira-Coutinho's numerous claims fell into two categories—claims of ineffective assistance of counsel and claims of prosecutorial misconduct prior to the appointment of trial counsel. Regarding all the claims of ineffective assistance of counsel, the court determined generally that even if counsel's performance was deficient in any of the ways alleged, the record refuted any claim that Oliveira-Coutinho suffered prejudice as a result of such deficient performance. The court stated, "if counsel were deficient in any of the claims alleged, the decision in this case would not have been any different in light of the evidence adduced at trial, which is thoroughly outlined in the direct appeal opinion." The court further stated that in

reviewing Oliveira-Coutinho's motion, it "was unable to find any specific facts relating to prejudice and instead could only locate generic statements."

Although it determined that the failure to specifically allege prejudice was in itself reason to overrule the motion, the court addressed Oliveira-Coutinho's specific claims of ineffective assistance of counsel. The court stated the claims were "at times confusing and somewhat overlapping," and it therefore addressed the claims in the following 11 categories: (i) failure to challenge the competency of codefendant Valdeir Goncalves-Santos to be a witness against Oliveira-Coutinho, (ii) failure to object to a jury instruction regarding a potential mistrial if jurors violated rules set forth by the court, (iii) failure to challenge the court's suppression ruling on appeal, (iv) failure to challenge the court's refusal to sequester the jury, (v) failure to challenge the aiding and abetting instruction, (vi) failure to challenge the instruction on first degree murder, (vii) failure to file a motion to discharge on speedy trial grounds, (viii) failure to object to the testimony of Oliveira-Coutinho's wife on grounds of hearsay and marital privilege, (ix) failure to object to portions of the State's opening statements, (x) failure to object to the testimony of various witnesses based on hearsay and other bases, and (xi) failure to investigate certain witnesses and evidence. The court addressed these claims as follows.

**(i) Failure to challenge competency of codefendant.** As discussed further in our opinion on direct appeal, *State v. Oliveira-Coutinho*, 291 Neb. 294, 865 N.W.2d 740 (2015), Goncalves-Santos testified at Oliveira-Coutinho's trial, and he generally testified that he and another individual helped Oliveira-Coutinho kill the Szczepaniks. In his amended motion for postconviction relief, Oliveira-Coutinho claimed that counsel was ineffective for failing to challenge Goncalves-Santos' competency to testify and for failing to raise the issue on appeal. The district court determined that these claims were refuted by the record, which showed that counsel filed a

motion challenging Goncalves-Santos' competency, the trial court overruled the motion after a hearing, and counsel asked for a reconsideration, which the trial court denied. The court also stated that this court had affirmed the trial court's rulings on these matters on direct appeal.

**(ii) Failure to object to jury instruction regarding potential mistrial.** Oliveira-Coutinho claimed that counsel was ineffective for failing to object to "Preliminary Jury Instruction No. 1," which he alleged stated in part:

> "Any juror who violates these restrictions I have explained to you jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over. As you can imagine, a mistrial is a tremendous expense and inconvenience to the parties, to the Court and the taxpayers."

(Emphasis omitted.) He argued that counsel should have objected to this instruction because it was confusing and prejudicial to his case and would discourage jurors from reporting misconduct. The district court determined that the record refuted this argument because the first jury instruction "filed October 9, 2012," did not contain the language alleged. The court also noted that Oliveira-Coutinho failed to cite any authority establishing that an objection to such an instruction would have been successful.

**(iii) Failure to challenge suppression ruling on appeal.** Oliveira-Coutinho claimed that counsel on direct appeal failed "to raise and argue a violation of [his] Fifth Amendment right." In this claim, he refers to a motion to "suppress [his] February 1st, 2010[,] Stop, Search and Detention under both the 4th Amendment and the 5th Amendment." Oliveira-Coutinho stated that counsel on appeal failed to assign and argue any Fifth Amendment violation, but he asserts that his "illiteracy prevents him from adequately present[ing] the Fifth Amendment claim and argu[ing] how this Claim would have changed the direct appeal result." The district court noted that counsel did challenge the suppression ruling on direct appeal but that the

challenge was not successful. The court determined that its review of the trial court's suppression ruling, "in combination with the lack of law supplied by [Oliveira-Coutinho]," revealed no additional challenges to the suppression ruling that would have changed the result of the direct appeal.

**(iv) Failure to challenge refusal to sequester jury**. Oliveira-Coutinho claimed that counsel on direct appeal failed to provide an adequate record for this court to review a claim that the trial court erred when it overruled a motion to sequester the jury for the entirety of the trial. He also claimed counsel failed to raise an issue on appeal regarding whether the trial court should have sequestered the jury at the start of deliberations. The district court determined that the record refuted these claims because (1) counsel raised and argued the denial of the motion to sequester for the entire trial, but the assignment of error was rejected on appeal, and (2) the record showed that "the jury was going to be sequestered at the request of [Oliveira-Coutinho] during deliberations."

**(v) Failure to challenge aiding and abetting instruction.** Oliveira-Coutinho claimed that trial counsel was deficient for failing to object to the felony murder instruction because the instruction allowed the jury to find him guilty if it found that the killing occurred during the course of a robbery that he committed either alone or while aiding and abetting another. He argues that the instruction was in error because he was not charged under a theory of aiding and abetting and because the instruction failed to include an intent element in connection with robbery. In separate but related claims, Oliveira-Coutinho asserted that counsel was deficient for failing to inform him prior to trial that he could be prosecuted under an aiding and abetting theory and for failing to challenge the constitutionality of Neb. Rev. Stat. § 28-206 (Reissue 2016), which provides that "[a] person who aids, abets, procures, or causes another to commit any offense may be prosecuted and punished as if he were the principal offender." He argued that the statute was unconstitutional because it allowed the State to prosecute a

defendant under an aiding and abetting theory without giving notice to the defendant that it intends to do so. He argued that the statute "makes the fatal assumption" that those who are subject to it understand they can be prosecuted under an alternative theory, and he asserts that because he does not speak English, he was not aware of the possibility of being convicted as an aider or abettor.

The district court stated that "the principle of aiding and abetting has been a staple in Nebraska law" and that "[Oliveira-Coutinho] fails to provide any authority creating a realistic constitutional challenged [sic] to the statute." The court cited case law to the effect that an information charging a defendant with a specific crime gives the defendant adequate notice that he or she may be prosecuted for having aided or abetted the crime. The court determined that a challenge to the constitutionality of the statute would have been unsuccessful and that an objection to the instruction also would have been unsuccessful because the instruction was supported by the evidence.

**(vi) Failure to challenge instruction on first degree murder.** Oliveira-Coutinho claimed that counsel was deficient for failing to object to the first degree murder instruction, which he asserted was "faulty, unconstitutional and incomplete." His claim focused on the provision in the instruction that the jury had to unanimously agree he was guilty of first degree murder but that it did not have to be unanimous as to whether he was guilty under a felony murder theory or under a premeditated murder theory. He argued that the instruction was confusing and misleading and that the evidence in this case did not support a premeditated murder theory. Oliveira-Coutinho made four additional claims related to this claim: He claimed that counsel was deficient for (1) failing on direct appeal to challenge "structural error" in the court's acceptance of a jury verdict that was erroneous because it did not require unanimity as to the theory of first degree murder, (2) failing to challenge on appeal the sufficiency of the evidence as to each theory,

(3) failing to propose a jury verdict form that would have required unanimity as to the theory of first degree murder, and (4) failing to challenge the constitutionality of a jury verdict form that did not require unanimity.

The district court cited case law which, it asserted, had rejected Oliveira-Coutinho's arguments regarding unanimity as to alternate theories of first degree murder. The court concluded that counsel was not ineffective, because the challenges proposed by Oliveira-Coutinho would not have been successful.

**(vii) Failure to file motion to discharge on speedy trial grounds.** Oliveira-Coutinho claimed counsel was deficient for failing to move for discharge based on statutory and constitutional speedy trial grounds and for failing to raise both issues on appeal. He alleged that he was charged by information on September 1, 2011; that trial did not begin until September 21, 2012; and that nothing extended the time for trial beyond 6 months.

The district court determined that the record showed that discharge would not have been granted even if counsel had filed the motion. The court agreed that Oliveira-Coutinho was charged on September 1, 2011, but it stated that trial began on September 17, 2012. The court further stated that three motions filed by Oliveira-Coutinho—a plea in abatement filed October 28, 2011, and ruled on January 5, 2012; a motion to sequester and change venue filed December 22, 2011, and ruled on July 9, 2012; and a motion to suppress filed March 21, 2012, and ruled on August 30, 2012—tolled the speedy trial clock to the extent that he was timely brought to trial. The court determined that counsel was not deficient, because a motion to discharge would have been unsuccessful.

**(viii) Failure to object to testimony of Oliveira-Coutinho's wife.** Oliveira-Coutinho claimed that counsel was ineffective for failing to object to testimony of his wife based on both hearsay and marital privilege. He argued that her testimony included hearsay because she testified regarding things he had

told her. He also argued that she should have been informed that she had the right to refuse to testify based on marital privilege.

The postconviction court determined that counsel was not deficient, because both objections would have been unsuccessful. The court first noted that Nebraska's rules of evidence provide a hearsay exception for statements made by the defendant. With regard to the marital privilege, the court noted that Neb. Rev. Stat. § 27-505(3)(a) (Reissue 2016) provides that the marital privilege may not be claimed in a criminal case where the crime charged is "a crime of violence."

**(ix) Failure to object to State's opening statements.** Oliveira-Coutinho claimed that counsel was deficient for failing to object to "[s]everal instances" within the State's opening statement in which the prosecutor was allegedly "vouching for the credibility" of Goncalves-Santos' testimony. Oliveira-Coutinho quoted portions of the opening statement in which the prosecutor said that Goncalves-Santos would "tell . . . the truth" and that he had taken certain actions because "he wanted to tell the truth."

The district court noted that counsel had raised the issue on direct appeal to this court and that the assignment of error was rejected. To the extent any of the specific statements cited by Oliveira-Coutinho were not included in the assignment of error on direct appeal, the court determined that this court's reasoning in rejecting the error showed that inclusion of the specific statements would not have changed the result. The court quoted a portion of this court's opinion in which we noted that by failing to object at trial, "Oliveira-Coutinho [had] likely waived any argument that the State erred in directly vouching for Goncalves-Santos"; however, we concluded that he had "preserved his argument that the State suggested the district court was also vouching for Goncalves-Santos." *State v. Oliveira-Coutinho*, 291 Neb. 294, 345, 865 N.W.2d 740, 777 (2015). We rejected the assignment of error because whether or not the State's comments amounted to misconduct, "such

misconduct was not prejudicial to Oliveira-Coutinho's right to a fair trial." *Id*. We concluded that "[t]he comments of the prosecutor during his opening statements were isolated in the overall context of the trial, [that] the jury was instructed specifically on Goncalves-Santos' testimony as well as on issues relating to arguments of counsel versus evidence presented," and that "the strength of the evidence overall was such that any alleged misconduct in opening statements was not prejudicial to Oliveira-Coutinho's right to a fair trial." *Id.* at 346, 865 N.W.2d at 778.

**(x) Failure to make objections.** The postconviction court's analysis included a section titled "Failure to make objections" in which it stated that Oliveira-Coutinho had made "a variety of arguments relating to trial counsel's failure to object to the testimony of different State witnesses based on hearsay and other arguments." By citing to pages of Oliveira-Coutinho's amended motion for postconviction relief, the court appears to include in this section several claims in which Oliveira-Coutinho claimed that counsel was deficient for (1) failing to object based on hearsay to testimony by three witnesses; (2) failing to challenge on direct appeal "prosecutorial misconduct by commenting on [Oliveira-Coutinho's] right to remain silent"; (3) failing to challenge on direct appeal prosecutorial misconduct based on the State's "withholding" notes and reports that a witness referred to in his testimony; (4) failing to move for a mistrial after the trial court noted on the record that during Goncalves-Santos' testimony, an unidentified person in the courtroom would nod or shake his head in a manner Oliveira-Coutinho characterized as "live co[a]ching" of the witness; (5) failure to either move for a mistrial or propose and request a limiting instruction after a witness "had an outburst" and "scream[ed], 'Why . . . did you kill my family?'"; (6) failing to raise on direct appeal the trial court's overruling an objection to evidence of his prior dismissed criminal charge; (7) failing to raise on direct appeal the trial court's overruling his hearsay objection to Goncalves-Santos' testimony regarding

a statement made by a victim; (8) failing to request a limiting instruction as to certain exhibits and failing to raise on direct appeal the court's failure to provide its own limiting instruction; (9) failing to raise on direct appeal the court's refusal to give a requested instruction regarding the credibility of the testimony of an accomplice; and (10) failing to raise on direct appeal the trial court's failure to instruct the jury that Oliveira-Coutinho's "'mere presence, acquies[c]ence or silence is not enough to sustain the State's burden of proving [Oliveira-Coutinho] guilty.'"

The district court stated that it was unnecessary to discuss each argument separately and that instead the claims could be "dealt with summarily due to the lack of prejudice asserted."

**(xi) Failure to investigate.** Oliveira-Coutinho made several claims that counsel was deficient for failing to investigate aspects of his case, including potential alibi defenses and witnesses. The district court concluded that Oliveira-Coutinho was not entitled to an evidentiary hearing on these claims. The court cited authority to the effect that postconviction claims of failure to investigate were insufficient when the defendant failed to allege how undertaking such investigative activities would have produced a different outcome at trial and that therefore, the allegations were insufficient to establish prejudice.

Finally, although Oliveira-Coutinho characterized all his claims as claims of ineffective assistance of counsel, the district court stated that one claim involved purported constitutional violations by the State prior to the appointment of the counsel who represented him at trial and on direct appeal. The court characterized the claim as "somewhat confusing" but stated that Oliveira-Coutinho appeared to claim that "the State violated his constitutional rights by assisting in obtaining [an attorney's] help in representing [Oliveira-Coutinho] and also by somehow obtaining [his] 'trial strategy' during the time frame that [the attorney] was appointed." The court noted that this attorney assisted Oliveira-Coutinho only in "determining

whether he wanted to provide a statement" to law enforcement and that the attorney "was not appointed to represent [him] any further in the proceeding." The court stated that it was "hard to see how [the attorney] could have even obtained the 'trial strategy' to reveal to the State," but that in any event, the claim could have been brought on direct appeal and was therefore procedurally barred in this postconviction action. The court stated that it could not identify a claim of ineffective assistance of counsel on direct appeal related to this claim, but it determined that any such claim that might have been raised on direct appeal was refuted by the record because the trial court overruled Oliveira-Coutinho's motion to suppress challenging, inter alia, the statement he provided to investigators after meeting with the attorney. The court stated that in its order overruling the motion to suppress, the trial court "found there was no error in any of the actions by the State or [the attorney] at the time [Oliveira-Coutinho] provided his statement to law enforcement." The court further noted that the State did not offer Oliveira-Coutinho's statement into evidence at his trial, and the court determined that he therefore suffered no prejudice.

Oliveira-Coutinho appeals the overruling of his motion for postconviction relief.

## ASSIGNMENTS OF ERROR

Oliveira-Coutinho claims that the district court erred when it denied his claims without an evidentiary hearing. In his assignments of error and in his arguments, he includes most but not all of the claims he set forth in his amended motion. Oliveira-Coutinho also claims that the court erred when it failed to appoint postconviction counsel.

## STANDARDS OF REVIEW

[1] In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively

show that the defendant is entitled to no relief. *State v. Privett*, 303 Neb. 404, 929 N.W.2d 505 (2019).

[2] We review the failure of the district court to provide court-appointed counsel in a postconviction proceeding for an abuse of discretion. *State v. Taylor*, 300 Neb. 629, 915 N.W.2d 568 (2018).

## ANALYSIS

As noted above, Oliveira-Coutinho in his amended motion for postconviction relief set forth almost 50 separately stated claims. The district court analyzed those claims in groupings and denied an evidentiary hearing on all claims. On appeal, Oliveira-Coutinho makes a general claim that the district court erred when it denied his claims without an evidentiary hearing. Oliveira-Coutinho then argues that the court erred when it found most but not all of his specific claims to be without merit; he argues the claims with varying degrees of depth.

We begin our analysis herein by setting forth standards that are applicable to our review of each postconviction claim. We then review all the claims Oliveira-Coutinho argues on appeal pursuant to those standards, and as discussed below, we determine that the claims were properly denied without an evidentiary hearing. Although we have reviewed each specific claim that Oliveira-Coutinho raises on appeal, our analysis below discusses in depth only certain claims that warrant such discussion, and we address the remaining claims in a more general fashion. Finally, we note that because the district court did not err when it denied Oliveira-Coutinho's claims without an evidentiary hearing, it also did not err when it denied his motion for appointment of postconviction counsel.

*Postconviction Standards.*

[3,4] Postconviction relief is available to a prisoner in custody under sentence who seeks to be released on the ground that there was a denial or infringement of his or her constitutional rights such that the judgment was void or voidable. *State v. Martinez*, 302 Neb. 526, 924 N.W.2d 295 (2019). Thus, in

a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable. *State v. Martinez, supra*.

[5,6] A court must grant an evidentiary hearing to resolve the claims in a postconviction motion when the motion contains factual allegations which, if proved, constitute an infringement of the defendant's rights under the Nebraska or federal Constitution. *State v. Martinez, supra*. If a postconviction motion alleges only conclusions of fact or law, or if the records and files in the case affirmatively show that the defendant is entitled to no relief, the court is not required to grant an evidentiary hearing. *Id*.

Oliveira-Coutinho's claims for postconviction relief assert that he received ineffective assistance of counsel. Because Oliveira-Coutinho was represented both at trial and on direct appeal by the same lawyers, this motion for postconviction relief was his first opportunity to assert ineffective assistance of counsel. See *id.*

[7-9] A proper ineffective assistance of counsel claim alleges a violation of the fundamental constitutional right to a fair trial. *State v. Taylor*, 300 Neb. 629, 915 N.W.2d 568 (2018). To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Taylor, supra*. To show prejudice under the prejudice component of the *Strickland* test, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. *State v. Taylor, supra*. A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine

confidence in the outcome. *Id*. The two prongs of this test may be addressed in either order, and the entire ineffectiveness analysis should be viewed with a strong presumption that counsel's actions were reasonable. *Id*.

With these principles in mind, we review Oliveira-Coutinho's claims of ineffective assistance of counsel.

*Competency of Goncalves-Santos.*

Oliveira-Coutinho claims that the district court erred when it refused an evidentiary hearing on his claims that counsel failed to properly challenge, both at trial and on appeal, the competency of Goncalves-Santos as a witness. The district court generally found that these claims were refuted by the record. We conclude that the record shows that Oliveira-Coutinho's proposed challenges to Goncalves-Santos' competency would not have been successful and that therefore, the district court did not err when it refused an evidentiary hearing on the claims.

In three separately stated claims in his amended motion, Oliveira-Coutinho generally claimed that counsel failed to (1) challenge Goncalves-Santos' competency at trial, (2) raise on direct appeal the trial court's error in allowing Goncalves-Santos to testify, and (3) "bring to the attention" of the trial court the mental competency of Goncalves-Santos. In these claims, Oliveira-Coutinho generally alleged that Goncalves-Santos had exhibited behaviors that indicated violent and antisocial tendencies that called his mental competency into question.

The district court determined that these postconviction claims were refuted by the record, which showed that counsel filed a motion challenging Goncalves-Santos' competency, that the trial court overruled the motion after a hearing, that counsel asked for a reconsideration, and that the trial court denied reconsideration. The court also stated that this court affirmed the trial court's ruling on these matters on direct appeal.

Oliveira-Coutinho argues on appeal that the district court's description of the record is inaccurate because counsel

requested an advance ruling only on what questions he might ask Goncalves-Santos regarding his competency and that counsel did not file a motion to determine Goncalves-Santos' competency. Oliveira-Coutinho claimed in his amended motion that counsel should have gone further than seeking to cross-examine Goncalves-Santos regarding his behavior and that instead, counsel should have asked the court to order a competency evaluation of Goncalves-Santos so that the court could determine whether he was competent to be a witness.

We agree with Oliveira-Coutinho that the district court in its postconviction order improperly focused on the motion regarding cross-examination rather than the actual focus of Oliveira-Coutinho's claim, which was that counsel should have moved the trial court to order a mental competency evaluation and determine whether Goncalves-Santos was mentally competent to be a witness. In our opinion in Oliveira-Coutinho's direct appeal, we stated that prior to trial:

> Oliveira-Coutinho filed a motion for advance ruling seeking to cross-examine Goncalves-Santos about his sexual relations with animals, his killing or harming of animals, his threats to kill his wife, and any other violent or antisocial tendencies or behaviors. . . . Oliveira-Coutinho argued that this evidence was relevant and went to the competency of Goncalves-Santos as a witness under rule 601.

*State v. Oliveira-Coutinho*, 291 Neb. 294, 308-09, 865 N.W.2d 740, 756 (2015). See Neb. Rev. Stat. § 27-601 (Reissue 2016). The trial court determined that Oliveira-Coutinho could not pursue the line of questioning because the matters "had no bearing on Goncalves-Santos' competency as a witness." *State v. Oliveira-Coutinho*, 291 Neb. at 309, 865 N.W.2d at 756. On direct appeal, Oliveira-Coutinho assigned error to this ruling. We affirmed the ruling on appeal on the basis that the competency of a witness was an issue to be determined by the court and not by the jury. We noted, however, that

"Oliveira-Coutinho did not assign that the district court erred in finding that Goncalves-Santos was competent to testify." *Id.* at 332, 865 N.W.2d at 770.

The issue decided by the trial court and affirmed by us on direct appeal was whether Oliveira-Coutinho would be allowed to cross-examine Goncalves-Santos on matters that allegedly went to his mental competency. But Oliveira-Coutinho's claim for postconvicton relief was that counsel should have sought a competency evaluation and should have sought to bar Goncalves-Santos' testimony because he was not mentally competent. It appears that trial counsel did not file such a motion, and we specifically stated in our opinion on direct appeal that Oliveira-Coutinho did not assign error to the trial court's finding that Goncalves-Santos was competent to testify. We therefore think the district court erred when it stated that the issue raised in these claims had been presented to the trial court and this court on direct appeal.

Nevertheless, we determine that for other reasons, the district court did not err when it refused an evidentiary hearing on these claims. In ruling that Oliveira-Coutinho could not cross-examine Goncalves-Santos regarding the matters he alleged had a bearing on mental competency, the trial court reasoned that such matters had no bearing on Goncalves-Santos' competency to testify. In its February 10, 2012, order overruling the motion, the trial court stated:

> Under Nebraska law, every person is competent to be a witness except as otherwise provided in the Rules of Evidence. NEB.REV.STAT. § 27-601. Even insanity or mental illness does not automatically render a witness incompetent to testify; only when the witness is unable to comprehend the obligation of an oath, or to understand and intelligently answer questions is the witness incompetent. *Garcia v. State*, 159 Neb. 571, 592, 68 N.W.2d 151, 165 (1955). There is no evidence that [Goncalves-Santos] is unable to comprehend the obligation of the oath or unable to answer questions asked of him.

The State argues that the trial court's reasoning indicates that even if counsel had requested a competency evaluation of Goncalves-Santos, the trial court would not have ordered such an evaluation and would not have determined that Goncalves-Santos was not competent to testify.

Oliveira-Coutinho's claims regarding Goncalves-Santos indicate that he is confusing concepts of competency of witnesses with issues of competency of a defendant to stand trial or to represent himself or herself. Oliveira-Coutinho claims counsel should have sought a competency evaluation and hearing for Goncalves-Santos, which evaluation and hearing seem similar to the type of evaluation and hearing that might be required to determine a defendant's competency. However, Oliveira-Coutinho cites no statute, case, or other law that would authorize the court to require a witness to submit to a psychiatric evaluation to determine his or her mental competency to testify.

Instead, as the trial court indicated, our rules of evidence provide, "Every person is competent to be a witness except as otherwise provided in these rules." § 27-601. Oliveira-Coutinho asserts no rule of evidence pursuant to which his allegations regarding Goncalves-Santos would render him not competent to be a witness. Furthermore, the trial court found no evidence that Goncalves-Santos was "unable to comprehend the obligation of the oath or unable to answer questions asked of him," and Oliveira-Coutinho points to nothing in Goncalves-Santos' extensive testimony at trial that would indicate otherwise.

The district court erroneously reasoned that the claims asserted by Oliveira-Coutinho in this postconviction action with regard to Goncalves-Santos' competency as a witness were addressed on direct appeal. Nevertheless, we determine that such claims did not allege a valid basis for relief and that the record refutes the merits of the claims. We therefore conclude that the district court did not err when it refused an evidentiary hearing on these claims.

*Jury Instruction Regarding Potential Mistrial.*

Oliveira-Coutinho claimed that counsel was ineffective for failing to object to "Preliminary Jury Instruction No. 1," which he alleged stated in part,

> "Any juror who violates these restrictions I have explained to you jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over. As you can imagine, a mistrial is a tremendous expense and inconvenience to the parties, to the Court and the taxpayers."

(Emphasis omitted.) He argued that counsel should have objected to this instruction because it was confusing and prejudicial to his case and would discourage jurors from reporting misconduct. The district court determined that the record refuted this argument because the first jury instruction "filed October 9, 2012," did not contain the language alleged. The court also noted that Oliveira-Coutinho failed to cite any authority establishing that an objection to such an instruction would have been successful. Although our reasoning differs, we conclude that the court did not err when it denied this claim.

The district court referred to the instructions "filed October 9, 2012," and stated that they did not contain the language alleged by Oliveira-Coutinho. The record indicates that the instructions filed on October 9 were the instructions given at the close of evidence. Oliveira-Coutinho alleged that the instruction at issue was a preliminary jury instruction, and the record confirms that the language quoted in his amended motion was given as a preliminary jury instruction. The district court therefore erred when it indicated that the alleged instruction was not given.

[10] However, the district court also stated that Oliveira-Coutinho failed to cite authority showing that a challenge to the instruction would have been successful. We agree with the district court that Oliveira-Coutinho alleged no such authority. In his amended motion and in his brief on appeal,

Oliveira-Coutinho argues that the instruction was inappropriate because it was confusing and could discourage jurors from reporting misconduct. But he cites no authority to support his contention that it was error for the court to give the instruction, and therefore, the argument appears to be a novel legal theory. We have held that "counsel's failure to raise novel legal theories or arguments or to make novel constitutional challenges in order to bring a change in existing law does not constitute deficient performance." *State v. Sanders*, 289 Neb. 335, 343, 855 N.W.2d 350, 357 (2014). Furthermore, Oliveira-Coutinho did not assert any actual prejudice that resulted from the instruction, such as juror misconduct that went unreported; he only alleged what might have occurred. We therefore conclude that the district court did not err when it denied this claim without an evidentiary hearing.

*Aiding and Abetting.*

Oliveira-Coutinho claims that the district court erred when it refused an evidentiary hearing on three claims related to the felony murder instruction, which allowed the jury to find him guilty based on a theory of aiding and abetting. In his amended motion, Oliveira-Coutinho claimed that trial counsel was deficient for (1) failing to object to the instruction, on the basis that he was not charged under a theory of aiding and abetting; (2) failing to challenge the constitutionality of § 28-206, which provides that "[a] person who aids, abets, procures, or causes another to commit any offense may be prosecuted and punished as if he were the principal offender"; and (3) failing to inform him prior to trial that he could be prosecuted under an aiding and abetting theory. We conclude that the district court addressed the first two of these claims and properly found that they did not warrant an evidentiary hearing. We further conclude that while the district court did not appear to explicitly address the third claim, the court did not err when it denied an evidentiary hearing on the claim, because Oliveira-Coutinho failed to adequately allege prejudice.

Regarding the first claim, Oliveira-Coutinho claimed in the amended motion that counsel was deficient for failing to object to the felony murder instruction because the instruction allowed the jury to find him guilty on an aiding and abetting theory when he was not arraigned on an aiding and abetting theory. On appeal, Oliveira-Coutinho asserts that the district court did not decide the merits of this claim. Without further argument regarding the merits of the claim, he contends that we should remand the cause for an evidentiary hearing on the claim.

[11] However, we find that the district court addressed this claim. The district court cited *State v. Stark*, 272 Neb. 89, 718 N.W.2d 509 (2006), for the proposition that an information charging a defendant with a specific crime gives the defendant adequate notice that he or she may be prosecuted for the crime specified or as having aided and abetted the commission of the crime specified. The district court concluded that because of this precedent, a challenge by counsel to the instruction would have been unsuccessful and therefore, counsel's failure to make the challenge was not ineffective assistance.

We agree with the district court's reasoning. In addition to *State v. Stark, supra*, in *State v. Contreras*, 268 Neb. 797, 803, 688 N.W.2d 580, 585 (2004), we held that "notwithstanding the fact that the information charging the defendant does not contain specific aiding and abetting language, an aiding and abetting instruction is proper where warranted by the evidence." We therefore agree with the district court's conclusion that a challenge to the aiding and abetting instruction based on the failure to charge the offense under an aiding and abetting theory would not have been successful.

We note that as part of this claim, Oliveira-Coutinho also asserted that the felony murder instruction omitted elements necessary to prove the crime under an aiding and abetting theory—specifically that he intended to commit the underlying felony or knew that the person he aided or abetted intended to commit the crime. He also appeared to assert as part of this

claim that the evidence did not support an aiding and abetting theory. The State argues on appeal that the trial court instructed on the allegedly missing elements in a separate instruction relating to aiding and abetting and that there was sufficient evidence that Oliveira-Coutinho aided and abetted in the commission of a felony. We agree with the State's arguments and agree that a challenge to the instruction on these bases would have been unsuccessful. We conclude that the district court did not err when it refused an evidentiary hearing on the claim that counsel was ineffective for failing to object to the felony murder instruction.

Regarding the second claim, Oliveira-Coutinho alleged in the amended motion that counsel was deficient for failing to challenge the constitutionality of § 28-206. He asserted that the statute was unconstitutionally overbroad, and he argued that the statute was unconstitutional because it allowed the State to prosecute a defendant under an aiding and abetting theory without giving notice to the defendant. He argued that the statute "makes the fatal assumption" that those who are subject to it understand they can be prosecuted under an alternative theory, and he asserted that because he does not speak English, he was not aware of the possibility of being convicted as an aider or abettor. The district court rejected this claim, reasoning that Oliveira-Coutinho "fail[ed] to provide any authority creating a realistic constitutional challenged [sic] to the statute."

We agree with the district court that Oliveira-Coutinho provided no authority indicating that a constitutional challenge to § 28-206 would have been successful. Oliveira-Coutinho referred in his amended motion to an accused's right to be informed of the nature of the charges against him; however, as discussed above, an information charging a defendant with a crime gives the defendant notice that he or she may be prosecuted for having aided or abetted the crime. In any event, the lack of notice argument is better understood as a due process challenge to the procedure by which the statute was

implemented rather than a challenge to the constitutionality of the aiding and abetting statute itself. Similarly, Oliveira-Coutinho's argument that he did not understand the charges against him because of a language barrier would not undermine the constitutionality of § 28-206; instead, the argument relates to whether he received ineffective assistance of counsel in violation of the Sixth Amendment because counsel failed to ensure he was aware of the charges against him. That is the subject of the third claim discussed below. Because Oliveira-Coutinho did not adequately allege how § 28-206 was unconstitutional, we conclude that the district court did not err when it refused an evidentiary hearing on the claim of ineffective assistance for failing to challenge the constitutionality of the statute.

Finally, regarding the third claim, Oliveira-Coutinho claimed in the amended motion that counsel was deficient for failing to inform him prior to trial that he could be prosecuted under an aiding and abetting theory. He asserted that had he known he could have been convicted as an aider and abettor, "he would have weight [sic] his options prior to proceed [sic] with the trial" and "could have insisted to enter into further plea negotiations or he would have opted to plea [sic] guilty to the State's second plea offer." Oliveira-Coutinho argues on appeal that the district court did not address this claim.

We agree with Oliveira-Coutinho that the district court did not specifically address the claim that counsel was ineffective for failing to advise him that he could be convicted as an aider or abettor. Instead, this claim appears among the claims the court generally disposed of by stating that Oliveira-Coutinho failed to allege prejudice. We conclude that the court did not err when it refused an evidentiary hearing on this claim because Oliveira-Coutinho failed to adequately allege prejudice.

The State argues on appeal that whether or not counsel's performance was deficient in this respect, Oliveira-Coutinho failed to allege a claim of ineffective assistance of counsel, because he failed to allege how he was prejudiced by such deficient performance. The State argues that he did not allege

that if counsel had properly advised him that he could be convicted on a theory of aiding and abetting, he would have entered pleas to the charges instead of going to trial.

We agree with the State that Oliveira-Coutinho failed to adequately allege how he was prejudiced and that to the extent he did allege prejudice, the record refutes his allegations of prejudice. As quoted above, Oliveira-Coutinho alleged merely that if he had been properly advised, he would have weighed his options, "could have" insisted on further plea negotiations, or would have accepted "the State's second plea offer." The allegation that he would have weighed his options is too vague to establish that he was prejudiced, because it does not allege a specific course of action that he would have taken if he had been properly advised.

Oliveira-Coutinho's allegations that he "could have insisted to enter into further plea negotiations" and that he would have accepted "the State's second plea offer" are more concrete allegations of specific actions he could or would have taken if properly advised. However, the record refutes that the alleged courses of action were viable. When he alleged in his amended motion that he "would have opted to plea [sic] guilty to the State's second plea offer," Oliveira-Coutinho referenced an exhibit attached to the amended motion. That exhibit, however, contradicts his allegation that he would have accepted "the State's second plea offer." The exhibit includes a letter from Oliveira-Coutinho's trial counsel in which counsel actually stated that "[t]he State never made such an offer" and instead that counsel had made an offer that the State rejected. Counsel further stated that the State had previously made an offer for Oliveira-Coutinho to plead to "multiple counts of second degree murder with no sentencing agreement," but that Oliveira-Coutinho had rejected that offer. Oliveira-Coutinho's allegation that he would have accepted "the State's second plea offer" is refuted by his own evidence which shows that no "second plea offer" had been made by the State. The exhibit further undermines his allegation that he "could have"

insisted on further plea negotiations, because it shows that prior plea negotiations had resulted in an offer from the State that Oliveira-Coutinho did not find acceptable and because the State's rejection of counsel's counter-offer indicated that the State was not open to further plea negotiations that would have yielded a better plea deal than that already offered.

This claim of ineffective assistance of counsel failed because Oliveira-Coutinho did not sufficiently allege prejudice and because his own exhibit undermined the allegations of prejudice that he did make. We therefore conclude that the district court did not err when it refused an evidentiary hearing on the claim that counsel was ineffective for failing to advise Oliveira-Coutinho he could be convicted under an aiding and abetting theory.

*State Vouching for Goncalves-Santos' Credibility.*

Oliveira-Coutinho claims that the district court erred when it refused an evidentiary hearing on his claim that counsel was deficient for failing to raise on appeal "[s]everal instances throughout the State's case in chief" in which the prosecutor was allegedly "vouching for the credibility" of Goncalves-Santos' testimony. The district court found that the claim was without merit because counsel had raised the issue on direct appeal and that the assignment of error had been rejected because the error was not properly preserved. On appeal, Oliveira-Coutinho attempts to change his claim from counsel's failure to raise the issue on direct appeal to counsel's failure to preserve the issue for appeal by objecting at trial. We agree with the district court that the claim alleged in the amended motion was refuted by the record.

In his amended motion, Oliveira-Coutinho claimed, "Appellate counsel provided deficient performance by failing to assign, raise, and argue during the direct appeal stage that the [p]rosecutor committed misconduct by vouching for the credibility of Goncalves-Santos." He then quoted portions of the opening statement in which the prosecutor said

that Goncalves-Santos would "tell . . . the truth" and that Goncalves-Santos had taken certain actions because "he wanted to tell the truth." Oliveira-Coutinho also cited to portions of the trial record in which two homicide investigators who had interviewed Goncalves-Santos testified that when they interviewed him, they let him know they expected him to tell the truth. Oliveira-Coutinho further cited to portions of the State's closing statement in which the prosecutor made comments similar to the quoted comments from the opening statement. Oliveira-Coutinho claimed that a competent attorney would have "noted, assigned and argued prosecutorial misconduct by and when [the] prosecutor vouched for the credibility of [the State's] star witness."

In its order denying postconviction relief, the district court noted that counsel had raised the issue on direct appeal to this court and that we rejected this assignment of error, in part because counsel failed to object at trial. To the extent any of the specific statements cited by Oliveira-Coutinho were not included in the assignment of error on direct appeal, the court determined that this court's reasoning in rejecting the assigned error showed that inclusion of the specific statements would not have changed the result.

The district court quoted a portion of our opinion in which we noted that by failing to object at trial, "Oliveira-Coutinho [had] likely waived any argument that the State erred in directly vouching for Goncalves-Santos." *State v. Oliveira-Coutinho*, 291 Neb. 294, 345, 865 N.W.2d 740, 777 (2015). However, we concluded that he had "preserved his argument that the State suggested the district court was also vouching for Goncalves-Santos." *Id*. We rejected the assignment of error because whether or not the State's comments amounted to misconduct, "such misconduct was not prejudicial to Oliveira-Coutinho's right to a fair trial." *Id*. We concluded that "[t]he comments of the prosecutor during his opening statements were isolated in the overall context of the trial, [that] the jury was instructed specifically on Goncalves-Santos' testimony as

well as on issues relating to arguments of counsel versus evidence presented," and that "the strength of the evidence overall was such that any alleged misconduct in opening statements was not prejudicial to Oliveira-Coutinho's right to a fair trial." *Id.* at 346, 865 N.W.2d at 778.

The claim Oliveira-Coutinho set forth in his amended motion was that counsel failed to raise the issue on direct appeal. In fact, counsel raised the issue on appeal, but this court determined that the error had been waived because Oliveira-Coutinho failed to object at trial. On appeal, Oliveira-Coutinho attempts to recast his claim as a claim that trial counsel was ineffective for failing to object and preserve the claim for direct appeal. But that is not the claim he made in his amended motion, and we will not consider an issue on appeal that was not presented to or passed upon by the trial court. See *State v. Haynes*, 299 Neb. 249, 908 N.W.2d 40 (2018), *disapproved on other grounds, State v. Allen*, 301 Neb. 560, 919 N.W.2d 500 (2018).

The claim presented to the district court in this postconviction action was limited to the performance of counsel on direct appeal, and the district court did not err when it refused an evidentiary hearing on the basis that the record showed that counsel had in fact raised the issue on direct appeal.

*Issues Related to Attorney's Representation of Oliveira-Coutinho.*

Oliveira-Coutinho claims that the district court erred when it refused an evidentiary hearing on claims he made related to his representation by an attorney, Matthew Kahler, when Oliveira-Coutinho was deciding whether to make a statement to law enforcement. The court found that the claims were procedurally barred because they were not raised on direct appeal, but it further found that the claims were refuted by the record. Assuming that the claims were not procedurally barred because they were fashioned as claims of failure to raise the issues on direct appeal, we conclude the district court did not err when

it found that the claims were refuted by the record and that Oliveira-Coutinho could not show prejudice.

In two separately stated claims in the amended motion, Oliveira-Coutinho alleged that (1) his counsel on direct appeal failed to assign and argue "violations of [his] Constitutional rights" and (2) "the State violated his Fifth, Sixth and Fourteenth Amendment rights in light of the fact that the prosecution had knowledge and possession of [Oliveira-Coutinho's] trial strategy before he was charged and tried." In the first of these two claims, Oliveira-Coutinho simply asserted, without further specifying the nature of the alleged constitutional violations, that appellate counsel provided deficient representation. In the second of the two claims, Oliveira-Coutinho began with the general allegation that the State had violated his constitutional rights, and then over several pages, he set forth how he thought the State violated his rights based on its role in finding an attorney to advise him at a time when he was considering making a statement to law enforcement. He generally alleged that after he invoked his right to counsel, the county attorney "was informed and personally appointed [Kahler] to represent" him, and that thereafter, Kahler disclosed "confidential communications" and "his trial strategy" to prosecutors.

The district court in its postconviction order found that the claims related to Kahler were procedurally barred because they could have been raised on direct appeal. Apparently, the court read the second of the above-described claims in isolation from the preceding claim when it stated that it "could not identify an ineffective assistance of counsel argument within the claim[]" and therefore determined that the claim was procedurally barred. Although it was not made entirely clear in the amended motion that the two claims were meant to be read together, we will assume for purposes of review that the two claims were intended to be read together and that together, they set forth claims of ineffective assistance of counsel for failing to raise issues on direct appeal and are therefore not procedurally barred in this postconviction action. However, the district

court found that even if the claims were not procedurally barred, they were refuted by the record. We agree.

The district court in this postconviction action determined that Oliveira-Coutinho's claim related to Kahler was refuted by the record because the trial court overruled Oliveira-Coutinho's suppression motion challenging, inter alia, the statement he provided to law enforcement while being represented by Kahler. The court stated in the postconviction order that in the order denying the motion to suppress, the trial court had specifically "found there was no error in any of the actions by the State or . . . Kahler at the time [Oliveira-Coutinho] provided his statement to law enforcement." The court further determined that because Oliveira-Coutinho's statement was not offered into evidence at his trial, he suffered no prejudice.

Oliveira-Coutinho argues on appeal that appellate counsel deficiently failed to raise on direct appeal that "the State" violated his rights by "appointing" Kahler to represent him and that by "appointing" Kahler, brief for appellant at 18, the State "[i]nterfered [w]ith [Oliveira-Coutinho's] [t]rial [s]trategy and . . . [o]btained [i]ncriminating [e]vidence," *id.* at 22. Oliveira-Coutinho asserts that after he invoked his right to counsel, officers who were questioning him contacted the county attorney and the county attorney "appointed" Kahler to represent him. *Id.* at 19. He further asserts that after advising Oliveira-Coutinho "to confess everything he knew about the triple-homicide," Kahler then "debrief[ed]" the prosecutors about what Oliveira-Coutinho told him during their conversation. *Id.* Oliveira-Coutinho argues he would not have made a statement to police if he knew that the attorney was not court appointed and that the attorney was acting as an agent for the State with the purpose of advising him to confess and then revealing his trial strategy to prosecutors.

The district court determined that the record relating to Oliveira-Coutinho's motion to suppress the statement refuted these claims. We therefore review the information disclosed in the trial record related to the motion to suppress the statement.

Oliveira-Coutinho was questioned by investigators in this case "on February 1 and into February 2, 2010, and again later in February and March." *State v. Oliveira-Coutinho*, 291 Neb. 294, 302, 865 N.W.2d 740, 752 (2015). "Oliveira-Coutinho was first questioned on February 1 . . . and was placed on a U.S. Immigration and Customs Enforcement (ICE) hold within 24 hours after the interview." *Id.* at 312, 865 N.W.2d at 758. Oliveira-Coutinho "was not initially held by the State on any charges related to the Szczepanik family's disappearance, but instead was placed on an ICE hold by the federal government." *Id.* at 327, 865 N.W.2d at 767. "Between March 6 and 11, Oliveira-Coutinho contacted an investigator in this case and spoke to him, against his attorney's advice, regarding Goncalves-Santos' involvement on March 11." *Id*. It is the March 11 statement that is relevant to Oliveira-Coutinho's claims related to his representation by Kahler.

Prior to trial, Oliveira-Coutinho moved to suppress, inter alia, the statement he made to investigators on March 11, 2010. With specific regard to the March 11 statement, he alleged that he had been interrogated in the presence of Kahler and that Kahler was neither appointed by a judge nor retained by Oliveira-Coutinho. After an evidentiary hearing, the trial court overruled Oliveira-Coutinho's motion to suppress in an order filed August 30, 2012. In the order, the trial court noted the following facts relevant to the March 11, 2010, statement: Oliveira-Coutinho had been interviewed by Christopher Spencer, an Omaha police detective, a few times between February 1 and March 5. On March 11, based on telephone calls Oliveira-Coutinho had placed to him, Spencer arranged to have Oliveira-Coutinho brought to an interview room. Oliveira-Coutinho indicated that he wanted to continue talking with Spencer, but he inquired as to whether he could speak with an attorney first. Spencer told Oliveira-Coutinho he could retain an attorney, but Oliveira-Coutinho said he could not pay for an attorney. Spencer relayed Oliveira-Coutinho's request for an attorney to Teresa Negron, the lead sergeant in charge of

the case. Negron first attempted to contact one of the attorneys who would eventually become Oliveira-Coutinho's trial counsel; however, after failing to reach that attorney, she contacted the county attorney, who in turn contacted Kahler. Kahler, who had previously been employed in the county attorney's office but was now in private practice specializing in criminal defense, agreed to help.

Kahler testified at the hearing on Oliveira-Coutinho's motion to suppress. He testified that on the evening of March 11, 2010, he received two calls—one from Negron and one from the county attorney. The two asked him whether he would be willing to come to police headquarters to advise a suspect who had made statements to the police on whether or not he should make any further statements. Kahler's understanding at the time was that a court would appoint him to represent the suspect if and when charges were filed. Kahler went to police headquarters, where, at his request, police officers briefed him about the investigation and previous statements Oliveira-Coutinho had made. Kahler then met Oliveira-Coutinho and spoke with him through an interpreter. Kahler spoke with Oliveira-Coutinho with only the interpreter present for close to 2 hours. At the suppression hearing, Kahler replied "No" when the State's attorney asked whether there was "anything about the answering of the questions or the advice that [he] gave to [Oliveira-Coutinho] that was impacted by any other person or any agency, whether it be law enforcement, County Attorney's Office, or any other type of agency." Kahler testified that he told Oliveira-Coutinho, inter alia, that Oliveira-Coutinho was "obviously considered a suspect by the police" and that therefore, Kahler had "concern about him giving a statement . . . about knowing information about what other people had done." After Kahler had so advised him, Oliveira-Coutinho decided to continue speaking with officers. Kahler testified that Oliveira-Coutinho made the decision on his own and gave the ensuing statement voluntarily. Spencer thereafter interviewed Oliveira-Coutinho with Kahler and an interpreter present.

After the interview, Kahler asked the officers whether Oliveira-Coutinho was being charged based on admissions he had made related to accessing the victims' bank accounts; although officers were not certain, Kahler's understanding was that he would be charged sometime soon. Kahler also spoke with the county attorney about being appointed by the court, and he assumed he would be formally appointed the next day. However, Kahler learned the next morning that no charges had been filed against Oliveira-Coutinho. Kahler did not thereafter pursue appointment, and he did not meet with Oliveira-Coutinho again. The record shows that the State did not file any charge against Oliveira-Coutinho in connection with this case until approximately May 24, 2010, and that the court appointed different counsel at that time.

In its order overruling Oliveira-Coutinho's motion to suppress, the trial court stated with regard to the March 11, 2010, interview and Kahler's representation as follows:

> [Oliveira-Coutinho's] contention that . . . Kahler was not his attorney "at the time" of his interrogation on March 11ᵗʰ and in fact was "an agent of law enforcement and [the county attorney] and their attempt to get [Oliveira-Coutinho] to speak to them" is unfounded. [Oliveira-Coutinho] requested an attorney and before he made any further statements, a very well-qualified criminal defense attorney answered the call and provided him the help and legal advice he requested.
>
> After spending almost two hours privately with [Oliveira-Coutinho], Kahler then remained with him during the interview conducted by Spencer, whom [Oliveira-Coutinho] agreed to speak to, Kahler's professional advice notwithstanding.

[12] With regard to these issues, Oliveira-Coutinho generally alleged violations of 5th-, 6th-, and 14th-Amendment rights. A criminal defendant's Sixth Amendment right to the assistance of counsel attaches only after the initiation of adversary judicial criminal proceedings—whether by way of formal charge,

preliminary hearing, indictment, information, or arraignment. *State v. Scheffert*, 279 Neb. 479, 778 N.W.2d 733 (2010). Oliveira-Coutinho was not charged by the State until May 2010, and therefore, the Sixth Amendment right to counsel was not implicated at the time of the March 11 interview. Oliveira-Coutinho's references to the Fifth Amendment are not clear as to whether he is alleging a violation of his right to remain silent or a violation of his right to due process.

But the crux of his allegation is that Kahler was somehow acting as an agent of the prosecution, including the county attorney and investigators, and that in that role, Kahler both encouraged Oliveira-Coutinho to confess and later disclosed Oliveira-Coutinho's confidential trial strategy to the prosecutors. These allegations, however, are contradicted by the testimony of Kahler at the suppression hearing. Kahler testified that he expressed concerns about Oliveira-Coutinho's providing a statement when he was considered a suspect and testified that despite such advice, Oliveira-Coutinho made his own decision to give a voluntary statement. Furthermore, testimony by Kahler and others at the suppression hearing refuted that Kahler shared any sort of confidential communications with the prosecution; instead, testimony at the suppression hearing indicated that Kahler and Oliveira-Coutinho were able to speak outside the presence of the investigators, and there is nothing to indicate that Kahler shared any confidential communications, much less trial strategy, with the prosecutors. Kahler testified to communications with the investigators that were limited to the investigators' briefing him on what had occurred in the investigation of Oliveira-Coutinho. He also testified to communications with the county attorney but that such communications were limited to discussing how Kahler might be appointed by a court to represent Oliveira-Coutinho. Kahler testified that his advice to Oliveira-Coutinho was not influenced by law enforcement or the county attorney's office.

Kahler's testimony and other testimony at the suppression hearing refute the claim that Kahler acted as an agent for the

prosecution. Furthermore, Oliveira-Coutinho makes only general allegations of "trial strategy" that was disclosed by Kahler to the prosecution; he does not allege any specific information relevant to his trial strategy that Kahler learned and provided to the prosecution. Brief for appellant at 25. As the postconviction court noted, the limited involvement of Kahler at a time well before trial and before charges had been filed made it highly unlikely that he would have become privy to any significant trial strategy, which would have later been decided upon by Oliveira-Coutinho and his trial counsel, who were appointed months after Kahler's limited involvement in this case.

While we determine that these claims are not sufficiently stated and are materially refuted by the record, we take this opportunity to disapprove the process by which Kahler was apparently brought in to advise Oliveira-Coutinho. The testimony of both Spencer and Negron at the suppression hearing indicated that the process by which Kahler was brought in to advise Oliveira-Coutinho was not a typical occurrence. We think it should not be. The county attorney's office should not be involved in finding an attorney to advise persons being questioned by investigators; the county attorney should remain independent and impartial in fact and in appearance, and any involvement of the county attorney in obtaining counsel to advise a suspect damages at least the appearance of impartiality.

That having been said, the record refutes Oliveira-Coutinho's claim that Kahler acted as an agent for the prosecution and provided confidential trial strategy to the prosecution. We therefore conclude that the district court did not err when it determined that Oliveira-Coutinho's postconviction claims related to Kahler did not warrant an evidentiary hearing.

*Claims Not Addressed by District Court.*

In his brief on appeal, Oliveira-Coutinho asserts arguments with regard to various claims that he contends the district court did not address in its order denying postconviction relief. We

find that several of those claims were addressed in connection with other related claims in one of the sections we discussed in our statement of facts above. However, there are some claims we do not think the court specifically addressed in one of these sections.

We note that the court stated in its order, prior to addressing specific claims, that all of Oliveira-Coutinho's claims of ineffective assistance of counsel were without merit because he failed to adequately plead prejudice or the record refuted any allegations of prejudice. Therefore, to the extent the district court did not appear to specifically analyze a particular claim, we have reviewed that claim on the basis that the district court found that the claim failed based on the prejudice prong of an ineffective assistance of counsel claim.

There are a few claims set forth in Oliveira-Coutinho's amended motion that we do not think were addressed in one of the sections in which the court discussed specific claims and instead were addressed only by the court's general finding regarding prejudice. One of those claims was Oliveira-Coutinho's claim that counsel was deficient for failing to inform him he could be convicted under an aiding and abetting theory; we considered that claim in connection with other claims related to the aiding and abetting issue in an earlier section of our analysis, and we determined that the court properly denied the claim without an evidentiary hearing because Oliveira-Coutinho failed to adequately plead prejudice.

Two other claims we do not think were specifically addressed by the district court were Oliveira-Coutinho's claims that counsel was deficient (1) for failing to request a lesser-included offense instruction on the charge of accessory to a felony after the fact and (2) for failing to raise on appeal an issue related to the court's "[u]nconstitutional interpretation of Neb. Rev. Stat. §27-1101." We determine that the district court properly denied each of these claims without an evidentiary hearing.

[13] With regard to the first of these two claims, Oliveira-Coutinho claimed that counsel was deficient for failing to

request instruction on "a lesser included offense of accessory to a felony after the fact pursuant to Neb. Rev. Stat. §28-204." In the amended motion, this claim focused on the charge as being a lesser-included offense of first degree murder. But Oliveira-Coutinho's arguments in his brief on appeal focus on its being a lesser-included offense of theft by deception. In any event, accessory to a felony is not a lesser-included offense of either greater offense. A court must instruct on a lesser-included offense if (1) the elements of the lesser offense for which an instruction is requested are such that one cannot commit the greater offense without simultaneously committing the lesser offense and (2) the evidence produces a rational basis for acquitting the defendant of the greater offense and convicting the defendant of the lesser offense. *State v. Rocha*, 295 Neb. 716, 890 N.W.2d 178 (2017). Neb. Rev. Stat. § 28-204(1) (Reissue 2008) sets forth various ways in which one could "interfere with, hinder, delay, or prevent the discovery, apprehension, prosecution, conviction, or punishment of another for an offense" and therefore be guilty of being an accessory to a felony. The elements of accessory to a felony are not such that one could not commit either first degree murder or theft by deception without simultaneously committing accessory to a felony. Therefore, Oliveira-Coutinho would not have been entitled to a lesser-included offense instruction on accessory to a felony and he could not establish prejudice from counsel's failure to request such an instruction. We conclude the district court did not err when it denied this claim without an evidentiary hearing.

With regard to the second of these claims, in his amended motion, Oliveira-Coutinho claimed counsel on direct appeal was ineffective for failing to raise on appeal an issue related to the court's "[u]nconstitutional interpretation of Neb. Rev. Stat. §27-1101." He did not further explain the claim in the amended motion, but he cited to a portion of a pretrial hearing on his motion to dismiss due to loss of testimonial evidence. The trial court sustained the State's hearsay objection to his question

to an investigator which would have required the investigator to testify to statements made by Oliveira-Coutinho during the investigation. In his brief on appeal, Oliveira-Coutinho does not argue this claim beyond the allegations in his amended motion. Oliveira-Coutinho failed to allege how the trial court's interpretation of the statute was "unconstitutional" or how counsel's failure to raise the issue on appeal affected the outcome of the direct appeal. Therefore, Oliveira-Coutinho did not adequately allege a claim of ineffective assistance of counsel and the district court did not err when it denied this claim without an evidentiary hearing.

*Remaining Claims.*

With regard to the remaining claims that we have not specifically addressed above, we have reviewed such claims and the district court's disposition of those claims. In our statement of facts, we described how the district court resolved each of these claims. We determine that the district court adequately addressed such claims and that its conclusions regarding such claims were proper. We conclude that the district court properly found that the claims should be denied without an evidentiary hearing, and we do not believe such claims warrant further discussion herein.

In sum, we conclude that the district court did not err when it determined that the claims argued by Oliveira-Coutinho in this appeal did not warrant an evidentiary hearing. We therefore reject Oliveira-Coutinho's assignment of error asserting that the district court erred when it determined that the claims should be denied without an evidentiary hearing.

*Appointment of Postconviction Counsel.*

[14,15] Oliveira-Coutinho also claims that the district court erred when it denied his motion for appointment of counsel. Under the Nebraska Postconviction Act, it is within the discretion of the trial court to decide whether counsel shall be appointed to represent the defendant. See *State v. Taylor*, 300

Neb. 629, 915 N.W.2d 568 (2018). Where the alleged errors in the postconviction petition before the district court are either procedurally barred or without merit, thus establishing that the postconviction proceeding contained no justiciable issue of law or fact, it is not an abuse of discretion to fail to appoint postconviction counsel for an indigent defendant. See *id*. We therefore conclude the district court did not abuse its discretion when it denied Oliveira-Coutinho's motion to appoint postconviction counsel.

## CONCLUSION

We conclude that the district court did not err when it denied Oliveira-Coutinho's postconviction claims without an evidentiary hearing, and we further conclude that the court did not err when it denied his request to appoint postconviction counsel. We reject Oliveira-Coutinho's assignments of error, and we affirm the district court's order.

Affirmed.

Freudenberg, J., not participating.